**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**J. Franklin KEMP,**
**Defendant–Appellant.**

No. 90–10213.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 16, 1991.

Decided July 11, 1991.

Jon M. Sands, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Janet L. Patterson, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before TANG, BOOCHEVER and NOONAN, Circuit Judges.

TANG, Circuit Judge:

J. Franklin Kemp pleaded guilty to an information charging him with bank robbery. At sentencing, the district court assessed Kemp two criminal history points for two prior convictions for "domestic violence." The court sentenced Kemp to forty-six months in prison. Kemp appeals his sentence. We vacate Kemp's sentence and remand for resentencing.

## FACTS AND PROCEDURE

Kemp was charged with two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Kemp pleaded guilty to an information charging one of the bank robberies. The presentence report assessed two criminal history points under the Sentencing Guidelines for Kemp's two misdemeanor "domestic violence" convictions under Arizona Law. *See* Ariz.Rev.Stat. § 13–3601. The assessment resulted in a criminal history category of II.

One of the incidents occurred on August 22, 1986, the second occurred May 21, 1988. For the first offense, the presentence report stated: "Mr. Kemp assaulted Kimberly Rusher." Kemp had been placed on probation with the condition that he attend counseling. When Kemp failed to attend, the state court revoked probation and sentenced him to five days in jail. The presentence report described the second conviction as "Mr. Kemp assaulted his wife, Cathi Kemp." The state court sentenced Kemp to five days in jail for the second offense.

Counsel for Kemp objected to the assessment of these criminal history points for these two "domestic violence" convictions. The probation officer, in response to Kemp's counsel's objections, stated that "such criminal behavior clearly has an element of physical danger and violence, as clearly demonstrated by its title."

At sentencing, Kemp's counsel represented to the court that the first incident was a yelling match between Kemp and his girlfriend, while the second incident was a yelling match between Kemp and his wife. Counsel stated that Kemp would testify to these facts if the court desired. The government presented no evidence whatsoever regarding the nature of these two convictions.

The district court determined that the "characterization of the convictions by the probation department in the presentence report and as used in computing the guidelines as set forth in the presentence report are appropriate." The district court sentenced Kemp to forty-six months in prison from a Guideline range of thirty-seven to forty-six months. Under a criminal history category of I, Kemp's Guidelines sentence range would have been thirty-three to forty-one months.

## STANDARD OF REVIEW

 We review *de novo* the district court's determination that a prior conviction falls within the scope of the Sentencing Guidelines. *United States v. Gross*, 897 F.2d 414, 416 (9th Cir.1990). We will not reverse a district court's determination of factual matters under the Sentencing

Guidelines unless it is clearly erroneous. *Id.*

## DISCUSSION

Kemp argues that the district court should not have assessed two criminal history points for his previous convictions because those convictions were similar to disorderly conduct. He contends, therefore, that his criminal history should have been category I instead of category II. In order to address the merits of Kemp's appeal, we first examine the Guideline and its previous interpretation.

### A. The Guideline

Section 4A1.2(c)(1) of the Sentencing Guidelines provides that misdemeanor convictions are counted towards the defendant's criminal history category. However, certain misdemeanor convictions are not counted unless (1) they are similar to the instant offense (the offense of conviction) or (2) resulted in more than one year's probation or thirty days' imprisonment.[1]

 Neither of Kemp's convictions had resulted in more than thirty days in jail or one year on probation. Nor are they similar to bank robbery. Kemp argues that his "domestic violence" convictions are similar to disorderly conduct which, under these circumstances, is not counted as criminal history under the Guidelines. The question confronting us, therefore, is whether the two "domestic violence" convictions are similar to disorderly conduct. If so, then Kemp's two prior convictions should not have been included in his crimi-

---

1. Sentencing Guideline § 4A1.2(c) states:
 Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows: (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
 Careless or reckless driving
 Contempt of court
 *Disorderly conduct or disturbing the peace*
 Driving without a license or with a revoked or suspended license

 False information to a police officer
 Fish and game violations
 Gambling Hindering or failure to obey a police officer
 Insufficient funds check
 Leaving the scene of an accident
 Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
 Non–Support Prostitution
 Resisting arrest
 Trespassing.
 (emphasis added).

nal history and Kemp's criminal history should have been category I.

**B. Interpretation of the Guideline**

In *United States v. Martinez*, 905 F.2d 251 (9th Cir.1990), we discussed how district courts should determine whether an offense is similar to those offenses not counted as part of the defendant's criminal history under the Sentencing Guidelines. There we examined whether public indecency is an offense similar to any of the offenses listed under Guideline § 4A1.2(c)(2). We noted that the primary purpose of the Sentencing Reform Act is to " 'provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records.' " *Martinez*, 905 F.2d at 253 (quoting 28 U.S.C. § 991(b)(1)(B)). We determined that the crimes listed under § 4A1.2(c)(2) are excluded from the defendant's criminal history because they are of such minor significance to the goals of sentencing. *Id.* Additionally, inclusion of those crimes would more likely distort than improve the process established by the Guidelines for determining the appropriate sentence. *Id.*

In *Martinez*, we examined public indecency under the Model Penal Code. *Id.* at 254. We determined: (1) that the elements of public indecency fall within the category of offenses denoted as "Open Lewdness;" (2) that public indecency is an offense that is uniformly culpable; and (3) that the majority of the states impose maximum terms of six months to one year. *Id.* We therefore concluded:

> Society has a substantial interest in punishing such conduct as a breach of public order, and in discouraging its repetition. Because public indecency is universally regarded as culpable, conviction of such an offense is relevant to the likelihood the offender will engage in criminal conduct in the future and is significant for sentencing purposes. We conclude pub-

lic indecency is not "similar" to the offenses listed in subsection [§ 4A1.-2(c) ](2).

*Id.*

**C. *Martinez* Distinguished**

■ *Martinez* suggests that we should examine the charge of "domestic violence" to determine if it is universally culpable, whether the penalty is usually light or severe, whether the charge is indicative of whether a defendant would engage in criminal conduct in the future, and whether society has a substantial interest in punishing this conduct and discouraging its repetition. 905 F.2d at 253. Applying this rationale to the "domestic violence" convictions, however, is practically impossible because the crime of "domestic violence" under Arizona law includes both disorderly conduct, which is excluded by the explicit language of the Guidelines, and assault, which is included.[2] Therefore, we must carve out an exception to the general rule enunciated by *Martinez*.

We hold that when a defendant has a prior conviction for this type of crime—that is, a crime of a generic definition, which contains both included and excluded offenses under the Guidelines—the district court should examine the information and any other relevant charging papers to determine whether the actual conduct constituting the crime is similar to one of the excluded crimes under the Guidelines. This is a narrow exception applicable only to these generic offenses where the mere fact of conviction does not reveal the underlying conduct constituting the offense.

**D. Uniform Standard**

■ Recognizing that the Sentencing Guidelines are used nationally to determine federal sentences for federal crimes, the district court must examine federal law to determine whether the substance of the

2. "Domestic violence" also includes crimes ranging from violent felonies against children (including murder, incest, sexual assault, aggravated assault, child prostitution, involving children in drug offenses) to such crimes as endangerment, threatening or intimidating, aggravated assault, custodial interference, unlawful imprisonment, kidnapping, trespass (another excluded crime), and criminal damage. Ariz.Rev. Stat.Ann. § 13–3601.

underlying state conviction is similar to an included or *excluded* offense.

Federal law uses the common law definition of assault. *United States v. Jim,* 865 F.2d 211, 213 (9th Cir.) *cert. denied* —— U.S. ——, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989). " '[A]n assault is committed by either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.' " *Id.* (quoting *United States v. Dupree,* 544 F.2d 1050, 1051 (9th Cir.1976)) (emphasis omitted). This is the standard the district court should use to assess whether Kemp's conduct constituted assault as included offense.

■ Because there is no federal or comparable national law to define what constitutes disorderly conduct, we must look to Arizona's definition of disorderly conduct to determine whether the substance of the underlying state conviction is similar to that excluded offense.[3] In Arizona, disorderly conduct is defined as:

A. A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person:

1. Engages in fighting, violent or seriously disruptive behavior; or

2. Makes unreasonable noise; or

3. Uses abusive or offensive language or gestures to any person present in a manner likely to provoke immediate physical retaliation by such person; or

4. Makes any protracted commotion, utterance or display with the intent to prevent the transaction of the business of a lawful meeting, gathering or procession; or

5. Refuses to obey a lawful order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

6. Recklessly handles, displays or discharges a deadly weapon or dangerous instrument.

Ariz.Rev.Stat. § 13–2904. In Kemp's case, the district court should determine whether the underlying conduct was similar to disorderly conduct. If Kemp committed only disorderly conduct as defined in Section A, 2, 3, 4, or 5 of the above statute, the conviction should not have been included in Kemp's criminal history.[4]

E. Application to the District Court's Findings

Counsel represented to the district court that Kemp engaged only in a yelling match in each of these two offenses. The presentence report, without revealing any factual basis, declared that these two convictions were for assault. The government presented no evidence at sentencing to support the presentence report. The district court nevertheless found that the defendant's actions constituted assault. However, there were no facts, other than the conviction for "domestic violence" itself to demonstrate that the defendant committed an assault. In fact, the evidentiary basis posited by defense counsel tended to point away from a finding of assault. Because a "domestic violence" conviction could be for an assault *or* for disorderly conduct without an assault, the district court had no factual basis to ground a conclusion that this conviction was for assault.

Given the present state of the record, we are unable to classify Kemp's conduct. Therefore, we vacate the sentence imposed and remand for resentencing. On remand,

---

**3.** We find *United States v. Aichele,* 912 F.2d 1170, 1171 (9th Cir.1990), inapplicable to this case. In *Aichele,* we declined to examine California state law to determine if reckless driving is a minor traffic infraction because the guidelines, the Sentencing Reform Act, and their respective commentaries were sufficiently clear as to the definition of an infraction. Thus we had no occasion to examine California law. Here, the definition of disorderly conduct is not illu-

minated by any federal source. Thus, lacking a federal source, we apply the Arizona law definition. ·

**4.** If Kemp's conduct falls into that gray area where disorderly conduct and assault overlap, we hold that the conduct should be counted. Assault is a serious crime which is normally counted under Guideline 4A1.2.

the district court must determine whether Kemp's actual conduct falls under Section A, 2, 3, 4, or 5 of Arizona's definition for disorderly conduct, or whether it constituted assault, as defined by federal law, and sentence Kemp accordingly.

### F. Burden of Proof

█ When the government seeks to adjust an offense level upward, it bears the burden of proof to support that upward adjustment. *United States v. Howard,* 894 F.2d 1085, 1089 (9th Cir.1990). The adjustment of the criminal history category is closely analogous. Under the Guidelines, a higher criminal history category produces a heavier sentence just as a higher offense level does. Therefore, on remand, the government will bear the burden of proof to establish that the state convictions warrant an increase in Kemp's criminal history category to II. In the circumstance of the case, proof of the conviction for "domestic violence" alone is insufficient to satisfy the government's burden of proof. Conviction demonstrates only that the defendant committed one of the many offenses defined under the broad sweep of the Arizona "domestic violence" statute. Something more is required to demonstrate that the defendant's actual conduct was not disorderly conduct but was an offense includable under Guideline § 4A1.2(c). A showing must be made to support a finding that the conduct of which the defendant was found guilty justifies the enhancement in the criminal history.

### CONCLUSION

We hold that the district court should examine the conduct underlying Kemp's two convictions to determine their nature. If they constitute disorderly conduct, they should not be counted in Kemp's criminal history. If they constitute assault, then they should be counted. The judgment of the district court is therefore

VACATED AND THE CAUSE IS REMANDED FOR RESENTENCING.