

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-1997

# United States v. Elmore

Precedential or Non-Precedential:

Docket 96-3462

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Elmore" (1997). *1997 Decisions.* Paper 51.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/51

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-3462

_____

UNITED STATES OF AMERICA
Appellee

v.

RAYMOND ELMORE
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 95-cr-00117)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 10, 1997

BEFORE: GREENBERG, COWEN and McKEE,
Circuit Judges

(Filed February 28, 1997)

Bonnie R. Schlueter, Esq.
Office of United States Attorney
633 United States Post Office
 and Courthouse
Pittsburgh, PA  15219

        Counsel for Appellee

Thomas J. Michael, Esq.
Law Offices of Thomas J. Michael
660 USX Tower
Pittsburgh, PA  15219

        Counsel for Appellant

_____

OPINION

_____

COWEN, Circuit Judge.

Raymond Elmore appeals from a judgment sentencing him to 108 months imprisonment to be followed by 5 years of supervised release.  We will affirm.

**I.**

On August 9, 1995, a three-count indictment was filed in the United States District Court for the Western District of Pennsylvania charging Raymond Elmore with distributing and possessing with intent to distribute cocaine and cocaine base on three different occasions in violation of 21 U.S.C. § 841. Elmore entered a plea of guilty to count three of the indictment.  Pursuant to a plea agreement with the government, counts one and two were subsequently dismissed.

The district court held a sentencing hearing on August 2, 1996.  It assigned one criminal history point for each of four prior offenses[1] it found that Elmore had committed, two of which are at issue here.  The first occurred in Pennsylvania in 1988 when, according to the Pre-Sentence Investigation ("PSI"), Elmore beat one Sherry Adams about the head and face, and threatened her with further violence.  The PSI notes that when called to the scene, police noticed a fresh scratch on Adams' face.  Elmore subsequently pled guilty to one count of harassment.

In the second incident, which occurred in Florida, police witnessed Elmore making threats against his wife and discovered a makeshift crack pipe in his car.  There also were allegations

---

[1]The court did not consider an additional prior offense on the ground that it was too remote in time pursuant to United States Sentencing Guidelines § 4A1.2(e)(4).

that Elmore struck his wife at her place of employment. Elmore subsequently pled "no contest" to possession of drug paraphernalia and assault.

The district court additionally assigned two criminal history points on the basis of an outstanding warrant issued in March of 1992 by authorities in Palm Beach County, Florida. With a total offense level of 29 and a Criminal History Category of III, the applicable guideline range was 108 to 135 months imprisonment. The district court imposed a sentence of 108 months imprisonment and 5 years of supervised release. This appeal followed.

## II.

Pursuant to United States Sentencing Guidelines § 4A1.1(c), in determining a defendant's criminal history category the district court is authorized to add one additional point, up to a maximum of four, for each of a criminal defendant's prior convictions. However, § 4A1.2(c)(1) excludes from consideration convictions for certain enumerated crimes and "offenses similar to them, by whatever name they are known" (except in circumstances not present here). One of those enumerated crimes and offenses that are excluded is "disorderly conduct."

Elmore contends that the offenses for which he was convicted were sufficiently "similar" to disorderly conduct to warrant exclusion. He further contends that one must look to the actual facts underlying each conviction, not just the fact of conviction and the elements of the offense as statutorily defined, to determine whether each is "similar to" disorderly conduct.

3

Our review of the district court's construction of terms included in the Sentencing Guidelines, a question of law, is plenary.  See United States v. McQuilkin, 97 F.3d 723, 727 (3d Cir. 1996).  We determine the meaning of "disorderly conduct" pursuant to federal, not state, law.  See United States v. Unger, 915 F.2d 759, 762-63 (1st Cir. 1990); United States v. Martinez, 905 F.2d 251, 253 (9th Cir. 1990); see also Taylor v. United States, 495 U.S. 575, 592, 110 S.Ct. 2143, 2155 (1990).  "Disorderly conduct" is used to "signify[] generally any behavior that is contrary to law, and more particularly such as tends to disturb the public peace or decorum, scandalize the community, or shock the public sense of morality."  BLACK'S LAW DICTIONARY 469 (6th ed. 1990).  Pursuant to MODEL PENAL CODE § 250.2(1) (1962):

> A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (a) engages in fighting or threatening, or in violent or tumultuous behavior; or
>
> (b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or
>
> (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.
>
> "Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.

We accept these as adequate descriptions of disorderly conduct

for purposes of federal law.

Several of our sister circuits have held that, where a state definition of a crime includes both activities that are includable and those that are excludable under U.S.S.G. §§ 4A1.1(c) and 4A1.2(c)(1), the court must look to the defendant's actual conduct to determine whether it constituted an excluded offense. See United States v. Ward, 71 F.3d 262, 263-64 (7th Cir. 1995); United States v. Kemp, 938 F.2d 1020, 1023-24 (9th Cir. 1991). Elmore urges that his convictions for harassment and for assault and possession of drug paraphernalia were both pursuant to statutes that overlap with the definition of disorderly conduct. As a result, Elmore contends that the district court was obligated to look into the facts underlying his convictions in order to determine whether they were, in fact, for disorderly conduct. We disagree.

As the government notes, the definition of "harassment" in Pennsylvania criminalizes certain activity when done, inter alia, "with intent to harass, annoy or alarm another person." 18 Pa.C.S.A. § 2709 (emphasis added). By contrast, "disorderly conduct," both in Pennsylvania and pursuant to the federal definition, consists of certain activity when performed with the purpose or intent "to cause public inconvenience, annoyance or alarm." Id. § 5503 (emphasis added); MODEL PENAL CODE § 250.2(1) (emphasis added).[2]

---

[2]Elmore's attempt to parse this language so that it forbids "public inconvenience," and also "annoyance or alarm" in general, is unavailing. We think it plain that the word "public" was intended to modify not only "inconvenience," but "annoyance" and "alarm" as well. See, e.g., Commonwealth v. Young, 535 A.2d

5

Thus, Pennsylvania follows the Model Penal Code approach of distinguishing between violent, unruly, or offensive conduct directed at an individual, which the state criminalizes as harassment, and similar activity when directed at the public at large, which the state characterizes as disorderly conduct. See Commonwealth v. Coolbaugh, 416 A.2d 563, 566–67 (Pa. Super. 1979) (Spaeth, J., dissenting); Commonwealth v. Duncan, 363 A.2d 803, 807 (Pa. Super. 1976); see also Commonwealth v. Greene, 189 A.2d 141, 144 (Pa. 1963). Compare MODEL PENAL CODE § 250.2 (disorderly conduct) with id. § 250.4 (harassment). Accordingly, unlike the Arizona "domestic violence" statute at issue in Kemp, 938 F.2d at 1023, Pennsylvania's definition of harassment does not proscribe activity considered to be mere "disorderly conduct" as that term is defined as a matter of federal law. See also United States v. Cox, 934 F.2d 1114, 1124 (10th Cir. 1991) (pursuant to Colorado law, menacing "is a crime against the person," while disorderly conduct "is a crime against the public peace, order, and decency"); cf. Ward, 71 F.3d at 262–63 (Wisconsin statute criminalizing "possession of a dangerous weapon by a child" covers both "juvenile status offense" crimes, excludable pursuant to U.S.S.G. § 4A1.2(c)(1), and crimes includable under that section).

As applied to his second conviction, Elmore's contention is equally meritless. It is inconceivable that Elmore's convictions for assault and possession of drug paraphernalia, as defined by

1141, 1142, 1143 (Pa. Super. 1988) (statute forbids recklessly creating risk of "public annoyance or alarm").

Florida, were based on activity that constituted mere disorderly conduct.  While all criminal activity may justifiably be said to "cause public inconvenience, annoyance or alarm", a conviction for a specific crime other than disorderly conduct demonstrates (without need to delve into the particular facts) that a defendant has done more than merely disturb the public order.

In short, Kemp and Ward require investigation into the facts underlying a conviction only when that conviction might in actuality be for mere disorderly conduct but not a different, more specific crime.  Because Elmore was convicted of more serious offenses that are addressed by specific statutory provisions, it is not possible that the conduct underlying those convictions consisted of mere disorderly conduct.  Kemp and Ward are thus inapposite.[3]

In United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991), the Court of Appeals for the Fifth Circuit held that the courts should inquire into "all possible factors of similarity," in determining whether an unlisted offense is "similar" to a listed offense for purposes of Guidelines section 4A1.2(c)(1).
These factors include
> a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the

---

[3]We respectfully disagree with the conclusion reached by the Court of Appeals for the Seventh Circuit in another case, United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995), that it was necessary to focus on the actual offense conduct in determining whether a conviction for "`knowingly damag[ing] any property of another without his consent,'" (quoting Ill. Rev. Stat. 1991, ch. 38, ¶ 21-1 (1991)), was "similar" to disorderly conduct for purposes of U.S.S.G. § 4A1.2(c)(1).

offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

Id.; accord United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995) (using Hardeman factors); see also Martinez, 905 F.2d at 253-54 (considering whether conduct constituting unlisted offense is "uniformly criminalized" and whether it indicates likelihood of future criminal conduct).

We decline to engage in such an inquiry. The apparent concern of Guidelines section 4A1.2(c)(1) in excluding from consideration "offenses similar to" the enumerated offenses "by whatever name they are known" is that an offense, the elements of which in actuality constitute "disorderly conduct as that offense is generally understood," should not be considered merely because that offense is denominated differently under state law. United States v. Fields, 39 F.3d 439, 447 n.9 (3d Cir. 1994). Accordingly, we follow the approach of the Court of Appeals for the First Circuit in Unger, 915 F.2d at 763 & n.5, and focus only upon the elements of the offenses as statutorily defined. See also Martinez, 905 F.2d at 255-56 (Wallace, J., concurring). In doing so above, we have found no "similar[ity]" between the offenses Elmore committed and "disorderly conduct," within the meaning of § 4A1.2(c)(1).[4] The district court correctly included those offenses in determining Elmore's criminal history category.

**III.**

---

[4]We thereby answer a question we left unanswered in United States v. Fields, 39 F.3d 439, 447 (3d Cir. 1994).

8

Pursuant to U.S.S.G. § 4A1.1(d) and the application note thereto, two points are to be added in determining a defendant's criminal history category if the present offense was committed "while a violation warrant from a prior sentence is outstanding . . . even if that sentence would have expired absent such warrant."

Elmore avers that Florida officials never attempted to execute the Palm Beach warrant. Elmore moved to Pennsylvania when the warrant had been outstanding for approximately one year. Members of Elmore's family testified at the sentencing hearing that Florida officials told them that they had no interest in bringing Elmore back from Pennsylvania to Florida pursuant to the warrant. Elmore argues that the district court erred in assigning two points on the grounds that the authorities had not pursued the warrant, and that it had lapsed by the time he committed the instant offense.

Elmore cites no authority for his position. The plain language of the Guidelines indicates that two points are to be added whenever an outstanding warrant is in existence, regardless of whether the warrant is stale pursuant to state law at the time of sentencing, and irrespective of whether state authorities have been lax in attempting to execute the warrant. See United States v. Camilo, 71 F.3d 984, 987 (1st Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1555 (1996). Further, the inclusion of language stating that an outstanding violation warrant from a prior sentence should be considered "even if that sentence would have expired absent such warrant," without further qualifying

9

language, indicates that the Sentencing Commission intended there to be no time limitations on the viability of an outstanding warrant for these purposes.  The district court committed no error in assigning two points on the basis of the Palm Beach warrant.

## IV.

For the foregoing reasons, the August 6, 1996, judgment of the district court will be affirmed.