# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2903

_____

United States of America,

        Appellee,

v.

Shane L. Borer,

        Appellant.

\* \* \* Appeal from the United States \* District Court for the \* District of Nebraska. \* \* \*

_____

Submitted: June 15, 2004
Filed: January 5, 2005 **(Corrected 1/13/05)**

_____

Before SMITH, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Shane Borer pled guilty to possession of firearms while subject to one or more domestic-violence protection orders, in violation of 18 U.S.C. § 922(g)(8). The firearms were discovered at Borer's home on July 26, 2002, after a fire at his residence. At that time, Borer was subject to two protection orders. Borer pled guilty to the charge on April 10, 2003.

At Borer's sentencing hearing on July 2, 2003, the district court calculated the base offense level under the United States Sentencing Guidelines at 14, *see* USSG § 2K2.1(a)(6)(A), and then added two levels for the number of firearms involved. *See*

USSG § 2K2.1(b)(1)(A). The court then granted a two-level reduction for acceptance of responsibility, *see* USSG § 3E1.1, resulting in a total offense level of 14. The court found that Borer's criminal history category was III, and that the applicable sentencing range was 21 to 27 months. The court sentenced Borer to 24 months imprisonment and three years of supervised release.

On appeal, Borer asserts several errors in the calculation of his sentence. He contends that the district court erred in denying a three-level reduction for acceptance of responsibility under USSG § 3E1.1(b), assessing one criminal history point for a prior criminal mischief conviction, and denying a six-level reduction under USSG § 2K2.1(b)(2) for possessing the firearms solely for sporting purposes or collection. Borer further argues that the government breached a plea agreement by failing to recommend a sentence in the middle of the guideline range. Finally, Borer argues that his trial counsel was ineffective because he did not object to the court's failure to grant Borer an additional level for acceptance of responsibility and to the government's alleged breach of the plea agreement. We affirm in part, reverse in part, and remand for resentencing.

I.

The Presentence Investigation Report ("PSR") prepared by the United States Probation Office did not recommend a reduction to Borer's sentence for acceptance of responsibility, and Borer properly objected. At the sentencing hearing, the district court found that Borer had accepted responsibility and reduced his offense level by two levels under USSG § 3E1.1(a). On appeal, Borer contends that the district court committed clear error by not awarding a three-level reduction under § 3E1.1(b), as it existed at the time of his offense,[1] because he "timely notif[ied] authorities of his

_____

[1]Prior to an amendment effective on April 30, 2003, § 3E1.1(b) stated:

intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." USSG § 3E1.1(b)(2) (Nov. 1, 2002).

The government concedes that Borer timely notified authorities of his intention to enter a plea of guilty, and thereby permitted the government to avoid preparing for trial. The district court gave no reason for denying a third level reduction under § 3E1.1(b)(2), and we find nothing in the record to support a finding that although the notification was timely for purposes of the government, it was somehow untimely with respect to the court. Accordingly, we conclude that the district court's denial of a decrease of one additional level under § 3E1.1(b)(2) was clearly erroneous.

At oral argument, the government asserted that Borer was ineligible for a three-level reduction under § 3E1.1(b), because under the guideline as amended by the

---

If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate its resources efficiently,

decrease the offense level by **1** additional level.

USSG § 3E1.1(b) (Nov. 1, 2002).

PROTECT Act in April 2003,[2] the third level reduction is available only upon motion of the government, and no such motion was filed at Borer's sentencing hearing. Borer argues that retrospective application of the new motion requirement would violate the *Ex Post Facto* Clause of the Constitution, and that the guidelines in effect at the time of his offense should be applicable. *See* USSG § 1B1.11(b). We have located only one precedent concerning application of the new motion requirement of § 3E1.1(b) to offenses committed prior to April 30, 2003. *United States v. Briceno*, No. 01 CR.943 LTS, 2003 WL 22025870, at *6 n.6 (S.D.N.Y. Aug. 23, 2003) (unpublished) (declining to apply PROTECT Act amendment to § 3E1.1(b), because "application of the amended Guideline would result in a harsher sentence than would application of the Guideline in effect at the time of the offense conduct"). We suspect that may be due to a policy of the United States not to seek retrospective application of the amendment for constitutional reasons.[3] But despite conceding that Borer satisfied the timely notice requirement of § 3E1.1(b), the government in this case nonetheless

---

[2]Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L.No. 108-21, § 401(g), 117 Stat. 650, 671-72 (April 30, 2003).

[3]*See*, *e.g.*, Brief for the United States at 16, *United States v. Zavala-Santillanez*, (9th Cir. filed May 28, 2004) (No. 04-50034) (government agreed that the application of the post-Protect Act version of USSG § 3E1.1(b) to the defendant would violate the constitutional prohibition against *ex post facto* laws); Brief for the United States at 13 n.5, *United States v. Kolbe*, (8th Cir. filed Dec. 17, 2003) (No. 03-3458) (government did not urge application of amended § 3E1.1(b) to offense committed before PROTECT Act due to "ex post facto concerns"); *PROTECT Act Substantially Alters Availability of Third Acceptance of Responsibility Point*, Federal Public Defender Report (Federal Public Defender, Western District of New York), Oct. 2003, at 21-22, http://www.frontiernet.net/ ~fpdnywro/news/2003-10.pdf (reprinting policy of United States Attorney for Western District of New York to apply amended § 3E1.1(b) only to offenses committed after April 30, 2003); *see also United States v. Lester*, 268 F. Supp. 2d 514, 515 n.2. (E.D. Pa. 2003) (government agreed that *Ex Post Facto* Clause barred application of restrictions on departures in PROTECT Act to sentencing for offense that occurred before enactment).

insists that a three-level reduction is not permissible, because the United States Attorney did not file a motion under amended § 3E1.1(b).

We think it evident that the government's position is inconsistent with the Ex Post Facto Clause. The addition of the motion requirement changes the operation of the guideline to Borer's detriment after his commission of the offense. The PROTECT Act amendment made it materially more difficult for Borer to earn a reduction for acceptance of responsibility by adding a requirement that the government authorize the court to grant a third level reduction. As a result, the statute was "retrospective and more onerous than the law in effect on the date of the offense." *Weaver v. Graham*, 450 U.S. 24, 30-31 (1981). The amended guideline would result in a substantial disadvantage to Borer because he would receive a longer sentence for the same conduct simply because he did not receive a motion from the government. *See Miller v. Florida*, 482 U.S. 423, 431-33 (1987) (defendant was "substantially disadvantaged" by change in calculation of primary offense points under sentencing guidelines which altered his presumptive sentence from 3½ - 4½ years to 5½ - 7 years); *Weaver*, 450 U.S. at 33 (statute reducing the amount of "gain-time" credits a prisoner could receive was unconstitutional as an *ex post facto* law); *Lindsey v. Washington*, 301 U.S. 397, 400-01 (1937) (change in punishment from a range of years with a maximum of 15 years to a mandatory sentence of 15 years violated the *Ex Post Facto* Clause); *cf. Carmell v. Texas*, 529 U.S. 513, 530 (2000) (change in rule of evidence that decreased burden on government to prove crime violated the *Ex Post Facto* Clause when applied to a defendant's case retrospectively). Accordingly, we hold that the version of § 3E1.1(b) in effect at the time of Borer's offense should be applied, and that Borer is entitled to an additional one-level reduction under § 3E1.1(b)(2).[4]

---

[4]We observe that if the government were correct that the amended version of § 3E1.1(b) applies, then there would be a serious question whether the government's failure to file a motion was rationally related to any legitimate government end. *See Wade v. United States*, 504 U.S. 181, 186 (1992). As noted, the government

-5-

Borer contends that the district court improperly assessed one criminal history point based on a conviction in November 2002 for criminal mischief under Nebraska law. The conviction arose out of an incident during which Borer became upset with his estranged wife when he was picking up his children, grabbed a cell phone from one of his children, and broke the phone by throwing it on the ground. He was sentenced to six months probation and required to pay $80 in restitution. Borer argues that this misdemeanor offense is "similar to" the offenses of disorderly conduct and disturbing the peace, which are excluded from counting under USSG § 4A1.2(c)(1), and that the district court should have refrained from assessing a criminal history point on that basis. We review *de novo* the district court's construction and interpretation of the criminal history provisions of the sentencing guidelines, and we review for clear error the district court's application of the guidelines to the facts. *United States v. Jones*, 87 F.3d 247, 248 (8th Cir. 1996).

Under USSG § 4A1.2(c)(1), an offense that is "similar to" disorderly conduct or disturbing the peace would not be counted in Borer's case unless the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days. We have held previously that the offense of "Assault and Criminal Damage to Property" is not similar to the offenses of disorderly conduct or disturbing the peace for purposes of § 4A1.2(c)(1). *United States v. Russell*, 913 F.2d 1288, 1294 (8th Cir. 1990). We now reach the same conclusion regarding the offense of criminal mischief under Nebraska law.

To determine whether two crimes are "similar" for purposes of § 4A1.2(c), we have endeavored to "compare the resemblance and character of the offenses." *United*

conceded that Borer timely notified authorities of his intention to enter a plea of guilty, and permitted the government to allocate its resources efficiently.

*States v. Webb*, 218 F.3d 877, 881 (8th Cir. 2000); *see also United States v. Mitchell*, 941 F.2d 690, 691 (8th Cir. 1991) ("similar to" must be given its normal meaning, *i.e.*, "nearly corresponding; resembling in many respects") (internal quotation omitted). This approach places us in the camp of those circuits that have opted to compare the "elements" or "essential characteristics" of the subject offenses to determine whether they have the requisite similarity. *See United States v. Perez de Dios*, 237 F.3d 1192, 1198 (10th Cir. 2001) (favorably citing *Mitchell* in adopting an "essential characteristics" approach); *United States v. Elmore*, 108 F.3d 23, 27 (3d Cir. 1997) (elements); *United States v. Harris*, 128 F.3d 850, 854-55 (4th Cir. 1997) (same); *United States v. Unger*, 915 F.2d 759, 763 (1st Cir. 1990) (same). We continue to believe that this approach is in keeping with the overall purpose of the Sentencing Reform Act to achieve consistency in sentencing and to reduce disparities in sentencing among similarly situated offenders. We thus decline Borer's suggestion that we adopt a multi-factor approach championed by the Fifth Circuit and others, which also considers the underlying facts of the defendant's offense, as well as such matters as a "comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, . . . the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991); *see also United States v. Martinez-Santos*, 184 F.3d 196, 205-06 (2d Cir. 1999); *United States v. Booker*, 71 F.3d 685, 689 (7th Cir. 1995). We share the concern of the Fourth Circuit that some of the factors used in these multi-factor tests are vague, subjective, or lacking in unifying principle, such that they "leave the law indeterminate." *See Harris*, 128 F.3d at 854-55.

In defining the character of the listed offenses, we look to federal law and consider such generic sources as the Model Penal Code and legal dictionaries to define these offenses. *See Elmore*, 108 F.3d at 25-26; *cf. Taylor v. United States*, 495 U.S. 575, 598 & n.8 (1989) (citing the Model Penal Code as support for the generic

definition of "burglary"). We observe that a person may be convicted of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, he "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present." Model Penal Code § 250.2(1) (1980).[5] "Disturbing the peace" is similarly defined as "[t]he criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise." *Black's Law Dictionary* 183 (7th ed. 1999). These offenses typically are directed at the public at large, and need not involve any specific threat of property damage or personal injury.

Criminal mischief, in our view, is an offense of a different and more serious character. To violate the Nebraska statute, a person must (a) intentionally or recklessly damage the property of another; (b) intentionally tamper with property of another so as to endanger person or property; or (c) intentionally or maliciously cause another to suffer pecuniary loss by deception or threat. Neb. Rev. Stat. § 28-519(1).

---

[5]The Model Penal Code provides that:

A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he

(a) engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or

(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Model Penal Code § 250.2(1) (1980).

-8-

Criminal mischief thus involves an intent to cause property damage, and a conviction signifies that a defendant has done "more than merely disturb the public order." *Elmore*, 108 F.3d at 26. None of the enumerated offenses in § 4A1.2(c)(1) involves property damage or personal injury, and we conclude that the requirement of intentional property damage or pecuniary loss renders criminal mischief in Nebraska categorically more serious than disorderly conduct or disturbing the peace. Accordingly, we hold that the district court did not err in assessing a criminal history point for Borer's conviction for criminal mischief. *Accord United States v. May*, 343 F.3d 1, 10 (1st Cir. 2003).

## III.

Borer also argues that he was entitled to a six-level reduction under USSG § 2K2.1(b)(2), which provides that a defendant's offense level should be reduced if the defendant possessed the firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or use such firearms. When considering the purpose for which the firearms were possessed, we consider "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history . . . and the extent to which possession was restricted by local law." USSG § 2K2.1, comment (n. 10).

We conclude that the district court did not clearly err in finding that Borer failed to satisfy his burden of proof to qualify for the sporting purposes and collection reduction. Although it would have been helpful for the district court to set forth its reasoning for the ruling on this point, we infer from the record that the court must have given weight to evidence presented from the defendant's ex-wife concerning alleged unlawful use of the firearms, and found unreliable the defendant's contrary explanations for his possession of the guns.

There was evidence from which the court could have inferred that Borer possessed the firearms for an unlawful purpose. The government submitted affidavits from Borer's ex-wife, which were prepared in 2001 and 2002 to support her applications for domestic-violence protective orders against Borer. In those affidavits, Borer's ex-wife asserted that Borer threatened her with a "rifle" while they were living in Ohio by holding the gun to her head. Although Borer now contends that his ex-wife was lying, he never contested the facts at the time the protective orders were entered. In a June 2003 affidavit, an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives stated that Borer's ex-wife had repeated her claim that Borer held a gun to her head, and that she was "pretty certain, but not 100% positive" that the weapon Borer held to her head was one of the guns at issue in this case. Borer claimed that he never possessed in Ohio the firearms charged in the indictment, and pointed out that the charged firearms were shotguns, while the ex-wife had specified use of a "rifle." Borer's father, however, told the ATF agent that Borer may have possessed the charged firearms in Ohio, and Borer's ex-wife averred in her statement to the ATF agent that the threatening weapon was "either a shotgun or a rifle."

The district court was also presented with conflicting evidence regarding the purposes for which Borer possessed the firearms in Nebraska. Borer initially testified that all three guns were "for hunting purposes only." He then seemed to contradict himself, however, by saying that he had not used the Ithaca and the Winchester shotguns for several years -- since he was in high school and 12 years old, respectively. He further testified that he had never used the Westernfield shotgun for hunting, and that it was merely a "collector's gun."

Borer and his father also provided inconsistent information about why the guns were at Borer's residence in Nebraska. Borer's father first told the ATF agent that he was storing the firearms at Borer's residence for the safety of his grandchildren. He then admitted, however, that he had purchased one of the firearms not for himself, but

for Borer. At the sentencing hearing, Borer testified that his father transferred the guns because he did not have enough storage space. Borer further emphasized that his father only had one gun case, while Borer had several individual cases in which to store the guns, but when the guns were found, none of them was stored in an individual gun case. Given the ambiguities in this evidence, we conclude that it was not clearly erroneous for the district court to find that Borer failed to meet his burden of proof. *See United States v. Truelson*, 169 F.3d 1173, 1174 (8th Cir. 1999) (defendant's equivocal answer regarding collection supported denial of reduction under §2K2.1(b)(2)).

## IV.

Finally, Borer contends that the government violated the plea agreement by concurring with the recommendation of the presentence report to sentence Borer in the middle of the applicable sentencing guideline range, rather than recommending a sentence at the low end of the applicable range. Issues concerning the interpretation and enforcement of a plea agreement are reviewed *de novo*. *United States v. Johnson*, 241 F.3d 1049, 1053 (8th Cir. 2001). "Plea agreements are contractual in nature, and should be interpreted according to general contract principles." *United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir. 2004).

Given the unusual language of the plea agreement in this case, we conclude that the government did not breach a material term of the agreement. The plea agreement stated: "Absent a departure or other downward sentencing benefit to the defendant *from the guideline range anticipated by the Presentence Report*, the United States Attorney agrees to recommend a sentence at the low end of the applicable Guideline range." (Plea Agreement ¶ 1c) (emphasis added). Here, the guideline range "anticipated by the Presentence Report" did not include a downward adjustment for acceptance of responsibility. Borer then received this "downward sentencing benefit" when the district court sustained his objection to the report. Accordingly,

-11-

under the plain language of the plea agreement, the government was not required to recommend a sentence at the low end of the sentencing range, and there was no breach of the agreement.

V.

Just as this opinion was ready for filing, Borer filed a motion for leave to file a supplemental brief arguing that *Blakely v. Washington*, 124 S. Ct. 2531 (2004), renders the United States Sentencing Guidelines unconstitutional. Although Borer's sentence was imposed without any upward adjustments to his offense level under the guidelines based on facts other than those admitted by Borer at his guilty plea, Borer wishes to argue that the sentencing guidelines may not be followed in any case after *Blakely*, and that his sentence under the guideline constitutes a "plain error" that should be corrected by this court. *See United States v. Olano*, 507 U.S. 725, 732-34 (1993). Whatever the ramifications of *Blakely*, we will not reach that issue until after the Supreme Court issues its opinions in *United States v. Booker* and *United States v. Fanfan*, if Borer wishes to pursue the matter through a petition for rehearing. *See* Administrative Order regarding *Blakely* issues entered on September 27, 2004.

* * *

For the foregoing reasons, we uphold the district court's ruling with respect to most of the disputed sentencing issues, but we vacate Borer's sentence and remand for resentencing with a three-level reduction for acceptance of responsibility.

_____