# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-4097

_____

|                                        |     |                                    |
|----------------------------------------|-----|------------------------------------|
| United States of America,              | *   |                                    |
|                                        | *   |                                    |
|                                        | *   |                                    |
| Appellant,                             | *   |                                    |
|                                        | *   |                                    |
| v.                                     | *   |                                    |
|                                        | *   |                                    |
| Vincent Bertling; Karl Raymond         | *   |                                    |
| Bertling,                              | *   |                                    |
|                                        | *   |                                    |
| Appellees.                             | *   | Appeals from the United States     |
|                                        | *   | District Court for the             |
| _____                            |     | Northern District of Iowa.         |

No. 07-1267

_____

|                                        |     |
|----------------------------------------|-----|
| United States of America,              | *   |
|                                        | *   |
|                                        | *   |
| Appellee,                              | *   |
|                                        | *   |
| v.                                     | *   |
|                                        | *   |
| Vincent Bertling,                      | *   |
|                                        | *   |
| Appellant.                             | *   |

_____

Submitted: October 16, 2007
Filed: December 26, 2007
_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

A jury found brothers Vincent Bertling and Karl Raymond Bertling guilty of one count of conspiracy to corruptly endeavor to influence, obstruct and impede justice in violation of 18 U.S.C. §§ 1503 and 371. The jury also found Vincent guilty of three counts of being an unlawful user of controlled substances in possession of firearms and Karl guilty of one count of being an unlawful user of controlled substances in possession of ammunition, all in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). The district court granted Vincent's and Karl's motions for a new trial on the conspiracy verdict and sentenced them on the remaining verdicts. The Government appeals the district court's decision to grant Vincent and Karl a new trial, and Vincent appeals his sentence. We affirm in part and reverse in part.

## I.    BACKGROUND

On December 2, 2005, Vincent Bertling was arrested on three charges of being an unlawful user of a controlled substance in possession of firearms in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). On December 7, 2005, Vincent's attorney learned that he had a conflict of interest with two potential witnesses against Vincent, Joanna Gillaspie and David Gillaspie, and he told Vincent that the Gillaspies were expected to be witnesses and of his resulting conflict. That same day, Vincent spoke with his brother, Karl, on a telephone from jail. At the beginning of the conversation, both parties were informed that the conversation would be recorded. Within the first

minute of the conversation, Vincent told Karl that Joanna and David would be testifying against him. The following exchange then occurred:

Karl: Oh, man, ohhh. Alright, It's time to get a murder on (or) it's time to get a murder run.

Vincent: Huh?

Karl: I said it's time to get a murder on (or) it's time to get a murder run.

Vincent: Something.

Karl: Um hum. Yeah. I got an enforcer.

Government Trial Exhibit 1001A at 2.[1] Immediately after these statements, Vincent told Karl that Joanna lived at her grandmother's house, further described as a lime-green house on G Street. Vincent also said that he thought Joanna worked at the Wal-Mart in South Sioux, but Karl corrected him and said she worked at Qwest. Vincent then told Karl that he saw other people in jail whom Joanna turned in to the police and commented that "she's ratting out everybody." Next, Vincent told Karl he was not certain whether another individual who hung out with Joanna, Matt, was assisting the

---

[1]The Government could not determine the exact words used in several portions of the conversation and included alternatives in the transcript presented to the jury. Vincent and Karl objected to the use of the transcript, but the district court permitted it, noting that Vincent and Karl could have chosen to include their own transcript. The recording was played for the jury and it, not the transcript, was the evidence the jury was instructed to consider. *See United States v. Wilcox*, 487 F.3d 1163, 1171 (8th Cir. 2007) (noting that the jury may read the transcript while listening to the recording even though the transcript was not admitted into evidence). The district court in its opinion, the Government in its brief, and the verdict form in its list of overt acts found by the jury added "I got it in for her" as an alternative for Karl's statement, "I got an enforcer."

Government. When Karl then said he had some "thingies on [his] to do list," Vincent repeated he was not "one-hundred percent sure what Matt's involvement [was], if any." This exchange all occurred within the first four minutes of the conversation. Finally, three minutes later, Vincent again mentioned Joanna and said that "it's Joanna that's trying to get me in trouble." After this, the brothers continued to talk about apparently unrelated matters for another eight minutes before the call terminated.

Based on this conversation, the Government obtained a superceding indictment, charging Vincent and Karl with conspiracy to corruptly endeavor to influence, obstruct and impede justice by murdering or otherwise intimidating witnesses in violation of 18 U.S.C. §§ 1503 and 371. The superceding indictment also included the initial three charges against Vincent for unlawful possession of firearms. A final count charged Karl with being an unlawful user of controlled substances in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

In September 2006, the Government presented its case against Vincent and Karl in a joint jury trial. To support the conspiracy count, the Government played the recording of the December 7, 2005 phone conversation between Vincent and Karl. Darin Maas and Amber Watson testified that Karl had referred to Maas as his "enforcer." Although Maas testified that Karl said it in a joking or nonchalant manner, Maas did not believe it was a joke inasmuch as he believed it was said to scare two people to whom Karl had entrusted drugs to sell. Amber Watson also testified that Karl told her he was going to take care of the witnesses testifying against Vincent. To prove the unlawful firearm possession counts, the Government called Joanna and David Gillaspie, who testified that they sold methamphetamine to Vincent and saw him use it. Watson testified that Vincent used drugs with her and bought drugs from the Gillaspies and that Vincent showed his handgun to her, telling her that he could take care of himself. Watson then testified that Karl sometimes carried a firearm and once said he had "no problems shooting first and asking questions later," if something went wrong in a drug deal.

After a four-day trial, the jury found Vincent and Karl guilty on all counts. In finding Vincent and Karl guilty of the conspiracy charge, the jury found that ten overt acts in furtherance of the conspiracy occurred during their December 7, 2005 phone conversation, including Karl's statement that "I got it in for her" or "I got an enforcer," Vincent's description of the house where Joanna lived, Vincent and Karl's discussion of where Joanna worked, and Karl's statement that he "got a couple more little thingies on [his] to do list."

After the verdict, Vincent and Karl filed motions for judgment of acquittal and for a new trial. The district court denied the motions for judgment of acquittal holding that "there [was] sufficient evidence to support the defendants' convictions." The court then granted both motions for a new trial on the conspiracy verdicts but denied Vincent's motion for a new trial on his unlawful possession of firearms verdicts. The court held that "the evidence weigh[ed] against a finding beyond a reasonable doubt that Vincent and Karl Raymond entered into a conspiracy to corruptly endeavor to influence witnesses" because the phone conversation was "simply too vague and nebulous." Instead, the district court considered the brothers' claimed non-violent histories and the tone of the conversation and concluded that the brothers were merely joking or venting frustrations, not conspiring to impede justice by murdering or intimidating witnesses. The district court also found that their discussion about where witness Joanna Gillaspie lived and worked was for "an innocent purpose," such as a "matter of identification." The district court did not find any evidence beyond the conversation supported the conspiracy verdict. Thus, it found that a new trial was necessary because the jury's verdict resulted in a miscarriage of justice.

At his sentencing hearing, Vincent argued that he was entitled to a reduction of his base offense level pursuant to the sporting purposes or collection reduction of § 2K2.1(b)(2) of the United States Sentencing Guidelines. In refuting this argument, the Government recounted Watson's trial testimony that Vincent once showed her his handgun and said he could take care of himself. The district court found that

Watson's testimony was sufficient to prove that Vincent possessed the handgun for self-protection.  The district court acknowledged that Vincent attempted to discredit Watson's testimony by arguing that she was unsure when this occurred and she had little contact with Vincent in the past few years.  However, the district court found her testimony to be credible and held that the sporting purposes or collection reduction did not apply because Vincent did not possess the handgun solely for those purposes.

The district court sentenced Vincent to 30 months' imprisonment and three years' supervised release on each of his three unlawful possession of firearm counts to run concurrently.  The district court sentenced Karl to 18 months' imprisonment and three years' supervised release on his unlawful possession of ammunition conviction.  The Government appeals the district court's decision to grant the motions for a new trial on the conspiracy count, and Vincent appeals his sentence based on the district court's refusal to grant a sporting purposes or collection reduction under U.S.S.G. § 2K2.1(b)(2).

## II.    DISCUSSION

### A.   New Trial

We review a district court's decision to grant a new trial for an abuse of discretion.  *United States v. Johnson*, 474 F.3d 1044, 1050 (8th Cir. 2007).  A district court abuses its discretion if it "fails to consider a factor that should have been given significant weight, considers and gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering and weighing only proper factors."  *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004).

When a district court considers a motion for a new trial, it may grant the motion if a miscarriage of justice would occur were the verdict to stand.  *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).  The decision is "within the sound

discretion of the trial court. While the district court's discretion is quite broad—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict—there are limits to it." *Id.* (internal quotation and citation omitted). "Motions for new trials based on the weight of the evidence are generally disfavored," and the district court must grant a new trial "sparingly and with caution." *Id.* (internal quotation omitted). A district court should not grant a motion for a new trial simply because it would have reached a different verdict. *United States v. Fazio*, 487 F.3d 646, 656 (8th Cir. 2007). In *Fazio*, we held that the district court properly denied a motion for a new trial and stated:

> There was evidence to support the verdict. It may or may not have been the same verdict we would have rendered had we sat on the jury. However, what the district court, or appellate court, thinks of a defendant's guilt or innocence is of little import if there is sufficient evidence to support the jury's guilty verdict. The jury watched and heard each witness testify, viewed the documentary evidence, and came to a conclusion about who and what to believe.

*Id.* Even under an abuse of discretion review that "certainly favors the district court's decision," we can still determine that the evidence in a particular case does not "preponderate[] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Campos*, 306 F.3d at 581 (internal quotation omitted).

The Government argues that the district court abused its discretion in granting the motions for a new trial because the evidence of the phone conversation sufficiently supported the jury's finding that the brothers entered into a conspiracy to impede justice by murdering or intimidating the witnesses and that they committed overt acts in furtherance of the conspiracy. Vincent and Karl argue that the district court correctly granted the motions for a new trial because it correctly found the language during the phone call was too vague to establish the alleged conspiracy to impede

-7-

justice. They also argue that there was no evidence that Vincent or Karl took any action in furtherance of a conspiracy because Karl went to jail days after the conversation.

"To prove conspiracy under 18 U.S.C. § 371, the government must show that (1) two parties entered into an agreement or reached an understanding to commit a crime, and (2) at least one of the parties overtly acted in furtherance of the agreement." *United States v. Wang*, 964 F.2d 811, 813 (8th Cir. 1992). The jury found that the December 7, 2005 phone conversation included ten overt acts in furtherance of an agreement or an understanding to impede justice. While we recognize that the district court has considerable discretion when deciding a motion for a new trial, we find that the district court abused its discretion by failing to give appropriate weight to the brothers' phone conversation, failing to consider additional evidence presented by the Government and by committing a clear error of judgment in its analysis of the evidence when it found that the conversation was too vague and nebulous for the formation of a conspiracy.

We conclude that the evidence presented in this case does not weigh so heavily against the jury's finding that a miscarriage of justice would result. The evidence presented to the jury does not preponderate heavily against the jury's verdict that Vincent and Karl entered into a conspiracy to impede justice and then took overt acts in furtherance of that conspiracy.

Vincent called Karl from jail and, within the first minute of the conversation, told him that David and Joanna Gillaspie would be testifying against him at his criminal trial. Karl immediately responded by twice saying it was "time to get a murder on" or "time to get a murder run," to which Vincent responded by saying, "something." Although the brothers spent the final eight minutes of the conversation

discussing unrelated matters, the next several minutes of the conversation support the existence of a conspiracy to impede justice between the brothers. Karl immediately responded to Vincent's "something" statement with a response to the effect that he had an "enforcer." Vincent then told Karl that Joanna lived in her grandmother's lime-green house. When Vincent volunteered that Joanna worked at the South Sioux Wal-Mart, Karl corrected him by saying that she worked at Qwest. Vincent also told Karl that another individual, Matt, might be assisting the Government. When Karl then referred to "thingies" on his to do list, Vincent responded that he was not certain whether Matt had assisted the Government. Vincent also told Karl that Joanna was "ratting out everybody" and that "it's Joanna that's trying to get me in trouble."

The Government also presented evidence beyond the phone conversation. Joanna Gillaspie testified that she worked at Qwest and that when she temporarily lived at her grandmother's lime-green house, Vincent dropped her off at that house on one occasion. The "enforcer" reference was supported by Watson's and Maas's testimony that Karl referred to Maas as his enforcer. Watson also testified that Karl said he was going to take care of the witnesses against Vincent.

With this evidence, the district court abused its discretion in reaching its conclusion that the jury's verdict was a miscarriage of justice. Its conclusion that Vincent's response of "something" was vague and nebulous ignores the fact the Vincent and Karl knew their conversation was being recorded. In light of that fact, the discussion was remarkably explicit. The evidence supports the apparent conclusion reached by the jury that Vincent's response of "something" to Karl's suggestions that it was time for a murder demonstrated he had reached an agreement or understanding with Karl that something was to be done to intimidate the witnesses, even if it was not necessarily to murder them.

Additionally, while we agree that the discussion of where Joanna lived and worked was for identification purposes, the district court's characterization that the discussion was innocent is without foundation. This discussion occurred immediately after the disclosure of her identity as a witness and the reference to murder. Moreover, the conversation up to that point was devoid of any other content that would justify or explain why they would be discussing where this witness lived and worked. Instead, the conversation included Karl's reference to his enforcer and Karl's statement that he had "thingies" to do, to which Vincent responded that he was not certain whether Matt assisted the Government. This response by Vincent supports the conclusion that he believed Karl was going to take some action against the witnesses and wanted to make sure that Karl only dealt with the individuals he was certain had assisted the Government, such as Joanna, who was "ratting out everybody."

Furthermore, there is no evidentiary support for the district court's conclusion that the brothers were joking or "merely blowing off steam or venting their frustrations." The recording of the conversation includes no indication that the brothers were not serious when one twice mentioned murdering witnesses and the other responded by saying, "something." Only Maas testified about Karl saying something in a joking or nonchalant manner when he referred to him as an enforcer, but that testimony concerned a previous reference, not Karl's reference to his enforcer in the phone conversation with Vincent. Moreover, Maas believed that Karl's reference to him as his enforcer was designed to intimidate others involved in a drug deal with Karl and that it was not a joke. Contrary to the district court's conclusion that there was no evidence beyond the recorded conversation of a conspiracy, Watson testified that Karl told her he was going to take care of the witnesses. The district court also did not mention the evidence of Vincent and Karl possessing handguns and threatening to use them when it found that the brothers' non-violent histories supported its conclusion that they were joking.

-10-

Therefore, the evidence presented in this case, when considered as a whole and in context, does not preponderate heavily against the jury's finding that Vincent and Karl entered into a conspiracy to impede justice. The verdict is not a miscarriage of justice, and the district court abused its discretion in finding otherwise.

While the district court did not analyze whether Vincent and Karl took overt acts in furtherance of a conspiracy because it held that the proof of an agreement was inadequate, Vincent and Karl argue, as alternative grounds for relief, that the district court properly granted the motions for a new trial because the overt acts that the jury found to be in furtherance of the conspiracy were at most specifications of the agreement, not overt acts in furtherance of it. However, any further discussions of how to achieve the purpose of the agreement can be overt acts in furtherance of the agreement. *See United States v. Civella*, 648 F.2d 1167, 1174 (8th Cir. 1981) ("Telephone conversations and meetings in which plans and arrangements are made in furtherance of the conspiracy are overt acts.").

The conspiratorial agreement was established when Vincent responded to Karl's statement that it was time for a murder by saying, "something." In the remaining conversation, Vincent and Karl discussed information necessary to find and murder or intimidate the witnesses, including Karl's statement that he had an enforcer, Vincent's description of where Joanna lived, and their discussion of where Joanna worked. We see no reason why these plans and arrangements cannot constitute overt acts in furtherance of the conspiracy simply because they were contained in the same phone conversation in which the conspiracy was also established. We are aware of no cases, and defendants cite none, that support the proposition that overt acts must occur at a time separate from the formation of a conspiracy. Furthermore, the fact that Karl was arrested before he was able to murder or intimidate the witnesses is irrelevant. *See United States v. Joiner*, 418 F.3d 863, 867 (8th Cir. 2005) (stating that

-11-

"[t]he fact the defendants were, or ultimately would have been, unsuccessful in their endeavor is irrelevant to the [conspiracy] analysis"). Therefore, we hold that the findings of the jury included sufficient overt acts in furtherance of the conspiracy, and that upholding the verdicts does not constitute a miscarriage of justice. *See id.* ("It is also settled doctrine that the crime of conspiracy is complete on the agreement to violate the law as implemented by one or more overt acts . . . .") (internal quotation omitted).

## B.    Sporting Purposes or Collection Reduction

Vincent also argues that the district court erred in refusing to apply the sporting purposes or collection reduction of U.S.S.G. § 2K2.1(b)(2) in sentencing him. We review a district court's factual findings for sentencing purposes for clear error. *United States v. Massey*, 462 F.3d 843, 845 (8th Cir. 2006). When an unlawful user of controlled substances possesses a firearm, his base offense level is 14. U.S.S.G. § 2K2.1(a)(6). When an unlawful user possesses the firearm "solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use [the firearm]," he is entitled to the sporting purposes or collection reduction that would decrease his base offense level to 6. U.S.S.G. § 2K2.1(b)(2). The defendant bears the burden of proving that he only possessed the firearm for sporting purposes. *Massey*, 462 F.3d at 845.

In determining the purposes for which a defendant possesses a firearm, "we consider 'the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history . . . and the extent to which possession was restricted by local law.'" *United States v. Borer*, 412 F.3d 987, 993 (8th Cir. 2005) (quoting U.S.S.G. § 2K2.1 cmt. n.6). "A defendant who possesses a handgun for personal protection is not

entitled to a § 2K2.1(b)(2) reduction." *United States v. Ramirez-Rios*, 270 F.3d 1185, 1187 (8th Cir. 2001).

Vincent argues that he only used his handgun for target shooting and that he kept his handgun locked in his house. According to Watson's testimony, though, Vincent also used the handgun for personal protection. The district court credited her testimony that Vincent showed her the handgun and said he could take care of himself. We leave the task of judging a witness's credibility to the district court. *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006). The district court properly considered all of the evidence and found that Watson's testimony was credible and sufficient to prove that Vincent used the handgun for protection. Therefore, the district court did not clearly err in relying on this testimony to conclude that Vincent did not prove that he only possessed the handgun for sporting purposes.

## III.   CONCLUSION

For the foregoing reasons, we reverse the district court's order granting a new trial on the conspiracy charges and affirm the district court's refusal to apply the sporting purposes or collection reduction to Vincent's sentence on his unlawful possession conviction. We remand for the district court to reinstate the conspiracy verdicts and resentence the defendants accordingly.

_____