**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　　*Plaintiff-Appellee,*

　　　　　v.

COBY JAMES MARLER,
　　　　　　　　*Defendant-Appellant.*

No. 07-30181

D.C. No.
CR-06-0087-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
January 7, 2008—Seattle, Washington

Filed May 29, 2008

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

David F. Ness, Assistant Federal Defender, Federal Defenders of Montana, Great Falls, Montana, for the defendant-appellant.

Leif M. Johnson, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

Coby James Marler appeals the sentence imposed following his guilty plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). We must decide whether the fact that a defendant is on escape status at the time he commits another offense means that the escape and the subsequent offense are "related" for purposes of calculating the defendant's criminal history score under United States Sentencing Guidelines Manual ("USSG") § 4A1.2(a)(2), even though the two offenses are not related in any other way. The district court rejected Marler's argument that his escape offense was related to his subsequent robbery conspiracy offense and sentenced Marler to 57 months' imprisonment. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We agree with the district court and therefore affirm the sentence.

**BACKGROUND**

In April 2002, Marler suffered a state felony conviction in Montana for robbery and received a twelve-year sentence. On January 5, 2005, he escaped from custody. He was arrested on January 11, 2005, by officers of the Great Falls, Montana, Police Department for conspiring with Melissa Wilson to rob the casino where Wilson worked. The scheme was uncovered when Wilson's father discovered bullet holes, shell casings, and a hand-drawn map of the casino in Wilson's residence. Wilson told officers that she wanted to "get back at the casino" because she had been unjustly accused of stealing money from the casino, and no one had apologized to her about the situation.

In April 2005, Marler pled guilty in state court in Deer Lodge, Montana, to a charge of escape and received a two-year sentence. In November 2005, he was convicted following

a jury trial in state court in Great Falls, Montana, of conspiracy to commit robbery and criminal mischief and received a thirty-year prison term.

Officers investigating the robbery conspiracy found photos of Marler holding handguns and interviewed several people who stated that Marler possessed guns. Officers also spoke with someone who recounted that Marler fired a gun into the wall on a dare.

In September 2006, Marler was charged in federal court with three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Marler entered into a plea agreement in which he agreed to plead guilty to the first count, and the government agreed to dismiss the other two counts.

The probation officer prepared a Presentence Investigation Report ("PSR"), which determined the sentencing guideline range to be 46 to 57 months. In calculating Marler's criminal history, the PSR imposed three points each for Marler's 2002 robbery conviction, his escape conviction, and his 2005 conviction for conspiracy to commit robbery, pursuant to USSG § 4A1.1(a). The PSR then added two points because Marler was on escape status when he committed the instant offense of being a felon in possession, pursuant to USSG § 4A1.1(d).

Marler objected to the PSR's criminal history calculation, arguing that the escape charge and the robbery conspiracy charges were "related," for purposes of USSG § 4A1.2(a)(2), and that he accordingly should not have received criminal history points for the sentences he received for both offenses. His argument was based on his contention that the crime of escape is a continuing offense and that the robbery conspiracy occurred while he was on escape status. The district court rejected his argument, stating that the escape conviction and conspiracy conviction were separate offenses.

Marler also argued that the conspiracy offense was related to the firearm possession charge because he planned to use the firearm in the commission of the robbery. The district court rejected his contention because there were undisputed facts in the record that Marler possessed and discharged the firearm in events unrelated to the robbery.

The district court accepted the PSR's findings and followed its recommendations in imposing sentence. The district court discussed the seriousness of the offense, Marler's extensive criminal history, and the danger Marler posed to the community in deciding to impose a sentence at the upper end of the guidelines range. Marler filed a timely notice of appeal.

## STANDARD OF REVIEW

The district court's interpretation of the sentencing guidelines is reviewed de novo, and its application of the guidelines to the facts of a case is reviewed for an abuse of discretion. *United States v. Grissom*, 2008 WL 1722813, at *4 (9th Cir. April 15, 2008); *United States v. Alghazouli*, 517 F.3d 1179, 1183 (9th Cir. 2008). "We review with due deference a district court's determination that two crimes were not related or consolidated for sentencing." *United States v. Asberry*, 394 F.3d 712, 718 n.8 (9th Cir. 2005).

## DISCUSSION

Marler raises two challenges to his sentence, both of them based on the calculation of his criminal history score, pursuant to USSG § 4A1.2. First, he contends that his escape and his robbery conspiracy convictions are related. His second contention is that the robbery conspiracy is related to the instant offense of the possession of the firearm.

## I.  Escape and Conspiracy Convictions

[1] The criminal history guidelines are based on the principle that "[a] defendant with a record of prior criminal behav-

ior is more culpable than a first offender and thus deserving of greater punishment." USSG ch. 4, pt. A, introductory cmt. USSG § 4A1.1(a) accordingly instructs the sentencing court to add three points to a defendant's criminal history category score for each prior sentence of imprisonment exceeding one year and one month. In order to avoid overstating a defendant's criminal history, however, USSG § 4A1.2 provides that related cases are to be treated as one sentence for criminal history purposes. USSG § 4A1.2(a)(2).

**[2]** Application Note 3 to § 4A1.2 provides that "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest." USSG § 4A1.2, cmt. n.3; *see Asberry*, 394 F.3d at 719. Here, there was no intervening arrest between Marler's escape and the robbery conspiracy. "If there was no intervening arrest we consider whether the sentences nevertheless 'resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.' "[1] *Asberry*, 394 F.3d at 719 (quoting USSG § 4A1.2, cmt. n.3).

---

[1]The 2006 version of the guidelines was used in determining Marler's sentence. The guidelines have been amended, effective November 1, 2007. The 2007 version eliminates the "related" language altogether in an attempt to "simplif[y] the rules for counting multiple prior sentences and promote[ ] consistency in the application of the guideline." USSG app. C, amend. 709 (2007). Section 4A1.2(a)(2) now provides that, if the prior offenses were not separated by an intervening arrest, they are to be counted separately "unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day."

The sentencing court generally is to use the Guidelines Manual in effect on the date of sentencing. USSG § 1B1.11(a); *see also United States v. Stevens*, 462 F.3d 1169, 1170 (9th Cir. 2006) (stating that "[a] district court generally applies the version of the Sentencing Guidelines in effect on the date of a defendant's sentencing"). "However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." USSG § 1B1.11(b)(2).

In this case, § 4A1.1(a) was relied upon to add three points for each of Marler's three state convictions. However, Marler argues that his escape conviction and his conviction for the robbery conspiracy are related for purposes of § 4A1.2(a)(2) and that he therefore should not have received criminal history points for both sentences. Marler does not argue that the offenses were part of a single common scheme or consolidated for either trial or sentencing. His argument rests solely on the premise that escape is a continuing offense[2] and that, because the robbery conspiracy occurred while Marler was on escape status, the two offenses "occurred on the same occasion." USSG § 4A1.2, cmt. n.3.

The Sentencing Commission explained that § 4A1.2 needed to be amended because the "related cases" rule was too complex and had led to confusion and a "significant amount of litigation." USSG app. C, amend. 709 (2007). Rather than merely clarifying the "related cases" concept, the 2007 version adopts a completely new inquiry. The 2007 amendment accordingly was a substantive change, not a clarifying change, and does not apply retroactively. *Accord United States v. Wood*, 2008 WL 1902663, at *4 (3d Cir. May 1, 2008) (holding that "the amended version of § 4A1.2(a)(2) effects a substantive change" and therefore did not apply retroactively, reasoning that Amendment 709 does not incorporate the "relatedness" concept into the main body of § 4A1.2, removes "any consideration of whether the offenses in question share any temporal proximity or factual relationship," and "fails to mention the notion of consolidation"); *United States v. Godin*, 522 F.3d 133, 135 (1st Cir. 2008) (holding that Amendment 709 was substantive, stating that "[t]he Commission said that a conflict existed as to the interpretation of the earlier guideline and, in lieu of clarification in favor of one view or the other, it adopted a new blanket rule that eliminates the ambiguity by going beyond any circuit's reading of the previous rule"). We therefore apply the 2006 version throughout this opinion.

[2]Marler relies exclusively on federal cases in arguing that escape is a continuing offense under Montana law. Because the government does not challenge this characterization, we assume that under Montana law, as under federal law, escape is a continuing offense, at least for some purposes.

**[3]** We disagree with Marler's contention. It is true that the Supreme Court has stated that escape from federal custody is a continuing offense; however, this characterization is not for purposes of determining whether crimes are related in the sentencing context. Rather, the Supreme Court has "stated that the crime of escape is a continuing offense because of the threat to society posed by an escaped prisoner and because the statute of limitations is tolled during the period an escapee is at large." *United States v. Alcarez Camacho*, 340 F.3d 794, 796 (9th Cir. 2003) (discussing *United States v. Bailey*, 444 U.S. 394 (1980)).

The question in *Bailey* was whether criminal defendants charged with escape who claimed that they were entitled to a jury instruction on their defense of duress or necessity needed to "proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force." *Bailey*, 444 U.S. at 415. The Supreme Court held that the prosecution needed only establish that "an escapee knew his actions would result in his leaving physical confinement without permission," and that, "in order to be entitled to an instruction on duress or necessity as a defense to the crime charged, an escapee must first offer evidence justifying his continued absence from custody as well as his initial departure." *Id.* at 408, 412.

**[4]** *Bailey* does not support Marler's contention that his escape conviction and robbery convictions were related for purposes of USSG § 4A1.2. *Bailey* merely addressed the *mens rea* required for an escape offense and whether, under the evidence presented, the defendants were entitled to a jury instruction on their theories of duress and necessity. The continuing nature of an escape offense does not mean that the escape offense continued to "occur" within the meaning of USSG § 4A1.2.

**[5]** We have not had occasion to determine whether the continuing nature of an offense such as escape necessarily

means that any offenses committed while on escape status are "related" to the escape for sentencing purposes.[3] However, we believe that treating Marler's escape and robbery conspiracy offenses as related would not be consistent with the purpose of § 4A1.2, which is "to reflect the seriousness of a defendant's criminal history," while, at the same time, avoiding "overstat[ing] the seriousness of the defendant's criminal conduct." *Asberry*, 394 F.3d at 719. Deeming any offense committed while on escape status as related to the escape would be inconsistent with the purpose of the criminal history guidelines to send "a clear message . . . that repeated criminal

---

[3]We have addressed the effect, in other contexts, of the continuing nature of a violation of 8 U.S.C. § 1326, illegal reentry, which, like escape, routinely has been held to be a continuing offense. *See, e.g.*, *United States v. Jimenez-Borja*, 378 F.3d 853, 857, 858 (9th Cir. 2004) (stating that the crime of being "found in" the United States, in violation of 8 U.S.C. § 1326, is a continuing offense, and that the date the offense ends "is significant for purposes of the statute of limitations, determining the applicable sentencing guidelines, and for venue"). However, we have not addressed the continuing nature of this offense in the context of determining whether prior sentences are related by virtue of having occurred "on the same occasion."

In *United States v. Reyes-Pacheco*, 248 F.3d 942, 944 (9th Cir. 2001), the defendant admitted illegally reentering the country in April 1996, but he was not "found" by authorities until February 2000. He asserted that the district court should have used the February 2000 date as the date of the offense, rather than the earlier date, because then he would not have received criminal history points for committing the illegal reentry offense "while on parole and within two years of being released from prison," pursuant to USSG § 4A1.1(d) or (e). *Id.* at 945. We rejected his argument, reasoning that the offense was a continuing offense that began when he entered the country and continued until he was found by authorities, and that " 'part of the instant offense' " accordingly occurred when he was on parole. *Id.* at 946 (quoting USSG § 4A1.1, cmt. nn. 4,5).

*Reyes-Pacheco* is inapposite. Determining the date of the offense for purposes of determining whether the defendant committed the offense of conviction while on parole or within two years after release from imprisonment is not relevant to the question of whether two prior offenses are related because they occurred on the same occasion.

behavior will aggravate the need for punishment with each recurrence." USSG ch. 4, pt. A, introductory cmt.

Finding the escape and the robbery conspiracy related within the meaning of § 4A1.2 is particularly inappropriate where, as here, there is no indication that the offenses were related to each other in any way — for example, the robbery offense was not committed in order to effect, or in the process of effecting, the escape, and the escape was not committed in order to effect the robbery. The two offenses were "not similar in nature," *Asberry*, 394 F.3d at 720, but instead were "entirely different crimes . . . that . . . resulted from [ ] discrete, identifiable illegal act[s]," *United States v. Ladum*, 141 F.3d 1328, 1347 (9th Cir. 1998).

**[6]** Marler escaped on January 5, 2005, when he left the Great Falls Transition Center, where he was an inmate, purportedly to go to a work assignment. Marler never reported to work and, in fact, was not scheduled to work that day. At this point, for criminal history calculation purposes, the escape was complete, even though Marler continued to be on escape status. *Cf. United States v. Banashefski*, 928 F.2d 349, 352 (10th Cir. 1991) (reasoning that a stolen vehicle offense was not part of the crime of being a felon in possession, for purposes of USSG § 4A1.2(a)(1), because the felon in possession crime "was complete *before* [the defendant] approached the car, and continued as well"). The robbery conspiracy was formed with Wilson several days later, as a form of revenge for the allegedly unjust theft accusation against Wilson by the casino. The escape and the robbery conspiracy accordingly involved "conduct severable by time, place, and harmed societal interest." *United States v. Vargas-Garcia*, 434 F.3d 345, 350 (5th Cir. 2005) (holding that a resisting arrest offense was not part of an illegal reentry offense for purposes of USSG § 4A1.2(a)(1)), *cert. denied*, 547 U.S. 1103 (2006).

**[7]** In addition, the cases were entirely separate and independent of each other. They were prosecuted in different

counties and Marler was represented by different lawyers. He pled guilty to the escape charge on April 7, 2005, and received a two-year term, whereas he was convicted on the conspiracy charge on November 3, 2005, following a jury trial, and received a thirty-year sentence. *Cf. Asberry*, 394 F.3d at 719-20 (holding that two offenses were not consolidated and were therefore unrelated, where the defendant was sentenced for both offenses "in the same court proceeding pursuant to a single plea agreement," but the offenses "were not similar in nature," and "the sentencing court used different docket numbers for the two offenses, did not issue a formal consolidation order and imposed consecutive sentences").

Marler's reliance on *United States v. Connor*, 950 F.2d 1267 (7th Cir. 1991), is also unavailing. In *Connor*, the Seventh Circuit held that the defendant's conviction for possession of a dangerous weapon was erroneously counted separately from his conviction for possession of stolen goods because the defendant "most likely had the knife and pistol to defend himself and possession of the very valuable stolen goods." *Id.* at 1270. Unlike *Connor*, in which the defendant's possession of the weapons was in furtherance of his possession of stolen goods, here, there is no indication that the robbery conspiracy was related in any way to the escape.

**[8]** The overall purpose of § 4A1.2(a)(2) and its Application Note 3 is to determine whether prior sentences are so related that the imposition of criminal history points for both sentences would unfairly overstate the seriousness of the defendant's criminal history. In determining whether offenses are related, "our ultimate goal remains finding a sentence that accurately reflects both the seriousness of the underlying federal offense and the extent and nature of the defendant's criminal past." *Asberry*, 394 F.3d at 719. Treating Marler's escape offense and his robbery conspiracy offense as related based solely on the premise that the escape was continuing at the time he committed the robbery conspiracy offense would allow "the concealed and extended nature" of the escape

offense to "shield multiple and 'severable instances of unlawful conduct' from their appropriate consequences at sentencing." *Vargas-Garcia*, 434 F.3d at 349 (quoting *Banashefski*, 928 F.2d at 352). We therefore affirm the district court's finding that the escape and the robbery conspiracy were not related offenses for purposes of USSG § 4A1.2(a)(2). *Cf. United States v. Esteppe*, 483 F.3d 447, 451-53 (6th Cir. 2007) (rejecting the defendant's argument that his escape offense was related to two burglaries committed subsequent to his escape by virtue of being "part of a single common scheme or plan," and holding that "all purportedly related offenses must have been conceived of by the defendant prior to committing the first offense in order to treat all of them as related"); *United States v. Wiseman*, 172 F.3d 1196, 1219-20 (10th Cir. 1999) (similarly rejecting the argument that an escape was related to robberies committed while on escape status, reasoning that the escape and the robbery offenses "were separated by several months in time and over a thousand miles in distance," "[t]here were no common victims," and "the escape clearly was a separate act").

## II.   Firearm and Conspiracy Convictions

**[9]** Marler's second contention is that he should not have been assigned criminal history points for the robbery conspiracy offense because the conspiracy was relevant conduct to the firearm offense. Application Note 1 to § 4A1.2 provides that a prior sentence is included in the criminal history calculation "if it was for conduct other than conduct that was part of the instant offense. Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense," pursuant to § 1B1.3. USSG § 4A1.2, cmt. n.1. Relevant conduct is defined to include conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1).

Marler contends that the conspiracy offense is relevant conduct to the firearm offense because his possession of the firearm "took place during the course of the robbery conspiracy." The district court disagreed, reasoning that there were undisputed facts in the record that Marler possessed and discharged the firearm "in events unrelated to this robbery."

Marler does not point to any evidence that his possession of the firearm occurred in conjunction with the robbery conspiracy. The count to which he pled guilty alleged that he possessed the firearm from November 2004 to January 2005, a time period that began before the robbery conspiracy began. Nor does Marler dispute the facts on which the district court relied to find that the robbery was not relevant conduct to the firearm offense. Instead, he argues, without citation to any evidence in the record, that he possessed the firearm in the apartment where the robbery was planned and most likely intended to use the firearm during the robbery. Marler does not deny that he possessed the firearm on other occasions prior to and unrelated to the robbery conspiracy.

**[10]** As with the escape and the robbery conspiracy, it would not further the purpose of the criminal history guidelines to find that the robbery conspiracy was relevant conduct to the firearm offense, especially where there is no evidence to support such a finding. The district court accordingly did not err in rejecting Marler's contention.

## CONCLUSION

Marler's prior sentence for escape is not "related" to his robbery conspiracy sentence for purposes of USSG § 4A1.2. Deeming the robbery conspiracy as having occurred on the same occasion as his escape solely because escape is deemed to be a continuing offense for some purposes is inconsistent with the purpose of the guideline to reflect accurately the seriousness of the defendant's criminal history, especially here, where the two offenses are not related in any other way.

Instead, they were discrete, dissimilar offenses. The district court therefore did not err in finding that they were not related offenses. The district court also did not err in finding that Marler's robbery conspiracy conviction was not related to his firearm conviction. The sentence imposed by the district court is

**AFFIRMED.**