# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2146

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Gregorio Leon-Alvarez, also known as | * | |
| Guadalupe Almanza Jr., also known as | * | |
| Goyo, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 16, 2008
Filed: June 27, 2008

_____

Before WOLLMAN, BRIGHT, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Gregorio Leon-Alvarez pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute 50 grams or more of methamphetamine mixture[1] and to misusing employment eligibility verification.[2] As part of the plea agreement, the

_____

[1]Conspiracy to distribute 50 grams or more of methamphetamine mixture is a violation of 21 U.S.C. §§ 841(a)(1) and 846.

[2]Misusing employment eligibility verification is a violation of 18 U.S.C. § 1546(b).

government dismissed eight other narcotics counts. At sentencing, Leon-Alvarez faced a mandatory minimum sentence of 60 months' imprisonment because of his prior convictions. The district court found that the Guidelines criminal history calculation was advisory and assessed Leon-Alvarez only one criminal history point despite his having two convictions. With only one criminal history point, Leon-Alvarez was eligible for safety-valve relief. The district court excluded one conviction and imposed a sentence of 37 months' imprisonment and 4 years of supervised release. The government appeals the district court's calculation of Leon-Alvarez's criminal history, arguing that such calculations are not discretionary. We reverse and remand for resentencing.

## I. *Background*

Undercover law enforcement officers conducted controlled buys of drugs from Leon-Alvarez on several occasions in 1997—November 10, 17, and December 15. On December 16, 1997, after the last controlled buy, the government filed a federal criminal complaint against Leon-Alvarez, charging him with distribution of methamphetamine.

Prior to the filing of the federal criminal complaint, Leon-Alvarez was convicted on state drug charges in the Woodbury County, Iowa District Court. The conviction was entered on November 4, 1997, and his sentencing was scheduled for December 19, 1997. Leon-Alvarez failed to appear for his state sentencing proceeding, and the government later determined that he had absconded to Mexico. Leon-Alvarez returned to the United States near the year 2000.

On March 9, 2005, in order to secure employment, Leon-Alvarez represented himself to be a United States citizen named Guadalupe Almanza, Jr. by signing an Immigration and Naturalization Employment Eligibility form with that name. Later that year, Leon-Alvarez was arrested on federal drug charges stemming from the 1997 drug transactions. Pursuant to a plea agreement, Leon-Alvarez pleaded guilty to

conspiracy to distribute methamphetamine and to misusing employment eligibility verification.

Leon-Alvarez's presentence investigation report (PSR), showed that Leon-Alvarez had other convictions besides his 1997 state drug conviction. On August 17, 1992, Leon-Alvarez was convicted of larceny and carrying a concealed weapon. For both charges, he received a sentence of one year probation and was ordered to pay a fine and costs. On December 17, 1993, Leon-Alvarez was convicted of contributing to the delinquency of a minor[3] after he was arrested while transporting an intoxicated minor in his automobile after curfew. For this conviction, he was sentenced to five hours in jail and ordered to pay a $40 fine.

The PSR recommended that the court count Leon-Alvarez's 1992 and 1993 convictions, yielding a two-point criminal history score. In the plea agreement, the parties agreed that Leon-Alvarez's base offense level was 26, and the government agreed to a three-level reduction for acceptance of responsibility, yielding a total offense level of 23. With a criminal history category of II, Leon-Alvarez faced a mandatory minimum of 60 months' imprisonment and an advisory range of 60 to 63 months.

The district court believed that a lengthy prison sentence would not further the policies of deterrence or rehabilitation. The court considered Leon-Alvarez's eligibility for safety-valve relief, which makes sentencing below a statutory mandatory minimum possible for some offenders. The district court gave Leon-Alvarez time to participate in a debriefing meeting with the government. Additionally, the district court treated

---

[3]The other charged offenses were harboring a minor and making alcohol available to minors. At sentencing in the instant case, there was some confusion regarding the actual offense to which he pleaded guilty. The district court treated all these offenses as a single contributing to the delinquency of a minor charge, and the parties do not dispute this determination on appeal.

the Guidelines instructions in Chapter Four regarding the counting of criminal history points for the purpose of applying the mandatory minimum statutes as only advisory.

In determining whether to count the 1993 conviction, the court was careful to note that contributing to the delinquency of a minor is not similar to the listed offenses, but it is "akin to . . . those listed there." When the government asked for clarification, the court stated that it was not finding that contributing to the delinquency of a minor was similar to any offense in § 4A1.2(c)(1)—which would permit the district court not to count the offense under the Guidelines—rather the court explained that its decision not to count the conviction rested on the advisory nature of the Guidelines. The government argued, in opposition, that the advisory nature of the Guidelines does not grant courts broad latitude in calculating criminal history points. The court noted the government's objection for the record and proceeded with its criminal-history-point calculation.

After the court determined that the 1993 conviction would not be counted, Leon-Alvarez was assessed one criminal history point. Logically, Leon-Alvarez requested a safety-valve reduction, which the district court granted. Using a criminal history category of I and a total offense level of 21, the district court found the advisory Guidelines range to be 37 to 45 months' imprisonment.[4] Ultimately, the

---

[4]In determining the sentence, it appears that the district court erred in reading Leon-Alvarez's combined adjusted offense level under paragraph 46 of the PSR. In calculating his total offense level, the court read this paragraph as stating that Leon-Alvarez's adjusted offense level was 24 when in fact it was 26. As a result, after the court applied further adjustments, the court arrived at a total offense level of 21 instead of 23. Using the total offense level of 21, the court applied a 37 to 46 month advisory range rather than the 46 to 57 range that would apply if the offense level was 23. The government does not appeal this calculation, but the government does note that the total offense level should be 23 and correctly points out that the appropriate range if a category II criminal history was applied would have been 51 to 63 months. Applying the statutory minimum, the appropriate range would be 60 to 63 months.

district court imposed a sentence of 37 months' imprisonment and 4 years of supervised release.

## II. *Discussion*

The government challenges Leon-Alvarez's sentence, arguing that the district court miscalculated his criminal history points and erroneously granted safety-valve relief. The district court excluded one of Leon-Alvarez's prior convictions when determining whether he was subject to a mandatory minimum sentence. Leon-Alvarez makes two arguments in rebuttal. First, the district court, in essence, found that the conviction and the listed offenses were similar under the Guidelines. Second, the Guidelines are merely advisory, thus, the district court did not err in refusing to assess a criminal history point for Leon-Alvarez's 1993 contributing to the delinquency of a minor conviction.

District courts may sentence below mandatory minimums, provided, among other things, that "the defendant does not have more than one criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). The central issue in this case is whether the district court properly excluded Leon-Alvarez's conviction for contributing to the delinquency of a minor when calculating his criminal history points.

The Guidelines count all felonies and misdemeanors for purposes of calculating a criminal history score; however, they also list several convictions that do not count unless "the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days." U.S.S.G. § 4A1.2(c)(1). The Guidelines further state this same exclusion applies for offenses that are similar to the ones listed in § 4A1.2(c)(1). Leon-Alvarez's 1993 conviction qualified for exclusion if his offense was similar to those listed in U.S.S.G. § 4A1.2(c)(1) because he received only a five hour sentence and a $40.00 fine.

-5-

The district court found that Leon-Alvarez's prior convictions did not fit within 4A1.2(c)(1) but nonetheless did not count his 1993 conviction. The district court stated that Leon-Alvarez's contributing to the delinquency of a minor conviction was *akin* to the listed offenses, but also found that the conviction was not *similar* within the meaning of 4A1.2(c)(1). The court went further to state that such a finding would be a stretch and explained that its decision not to count the offense rested on its determination that the Guidelines, including the calculation of the criminal history points, are advisory.

We hold that the district court's refusal to count the 1993 conviction was reversible error. Under *Gall v. United States*, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." 128 S. Ct. 586, 596 (2007). Only after the Guidelines are correctly calculated should the district court decide whether to impose a sentence outside the range suggested by the Guidelines. *Id.* at 596–97. Moreover, the Supreme Court has recently explained the advisory nature of the Guidelines further and intimated that triggers for statutory mandatory minimums are different. *See Kimbrough v. United States*, 128 S. Ct. 558, 572 (2007) (holding that "[the Anti-Drug Abuse Act of 1986] does not require . . . sentencing courts to adhere to the 100-to-1 ratio for crack cocaine quantities *other than those that trigger the statutory mandatory minimum sentences*") (emphasis added).

We have not yet been called upon to decide whether the calculation of criminal history points is rendered advisory after *Gall* and *Kimbrough*. We note, however, that the Supreme Court has indicated that statutory mandatory minimums are unaffected by *United States v. Booker*, which reaffirmed that "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt") 543 U.S. 220, 244 (2005) (emphasis added). Further, several of our sister circuits have

determined that the calculation of criminal history points is not advisory. *United States v. Hernandez-Castro*, 473 F.3d 1004, 1007 (9th Cir. 2007) (stating that "*Booker* did not affect the imposition of statutory minimums"); *United States v. McKoy*, 452 F.3d 234, 239–40 (3d Cir. 2006) (stating that 18 U.S.C. § 3553(f)(1) was left intact after *Booker*); *United States v. Brehm*, 442 F.3d 1291, 1300 (11th Cir. 2006) (holding that "the Supreme Court's decision in *Booker* did not render the calculation of eligibility requirements for safety-valve relief advisory . . . "); *United States v. Barrero*, 425 F.3d 154, 157–58 (2d Cir. 2005) (rejecting appellant's argument that 18 U.S.C. § 3553(f)(1) is rendered advisory by *Booker*); *United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005) (stating that "[c]riminal history is all about prior convictions; its ascertainment therefore is an issue of law excluded by *Booker* 's own formulation . . . "); *United States v. Menoza-Borunda*, 239 Fed. Appx. 416, 419 (10th Cir. 2007) (unpublished) (stating that "the district court correctly concluded that it could not ignore one of [the defendant's] criminal history points in order to make him eligible for safety-valve relief").

Mandatory minimum statutes are unaffected by *Booker* and its progeny because these statutes do not involve impermissible judicial factfinding under the Sixth Amendment. *See United States v. Warford*, 439 F.3d 836, 845 (8th Cir. 2006) ("*Booker*, however, does not render unconstitutional a statutory minimum sentence . . . and the Sixth Amendment does not prevent a district court from making findings about the fact and nature of a defendant's prior convictions"). The district court erred in finding that the advisory nature of the Guidelines permitted it to treat Leon-Alvarez's 1993 offense as akin to a listed excluded offense without actually being similar to one. To properly determine whether Leon-Alvarez is eligible for safety-valve relief, the district court should have first followed the Guidelines instructions for determining his criminal history category.

III. *Conclusion*

Accordingly, we reverse and remand for re-sentencing consistent with this opinion.

BRIGHT, Circuit Judge, concurring.

I agree with the majority that we should reverse and remand for resentencing. I write separately to highlight certain matters that the district court may consider in determining whether a defendant's prior conviction is similar to an offense listed in U.S.S.G. § 4A1.2(c)(1).

For the benefit of the district court and the parties, I begin by briefly recounting Leon-Alvarez's conviction and the district court's Guidelines' calculation. On August 10, 2006, Leon-Alvarez pled guilty to two counts of a ten-count indictment: (1) conspiring to distribute 50 grams or more of methamphetamine mixture in 1997 (Count 1); and (2) fraud and misuse of an employment eligibility verification form in 2005 (Count 10). Using the 2005 edition of the Sentencing Guidelines, the district court sentenced Leon-Alvarez on April 12, 2007 to concurrent terms of thirty-seven months on each count – a sentence below the mandatory minimum of sixty months.[5] The district court was able to do this because it concluded that Leon-Alvarez qualified for "safety valve" relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. A prerequisite for such relief, however, is a finding that Leon-Alvarez does not have more than one criminal history point. Thus, the crucial sentencing issue before the district court and on appeal is whether Leon-Alvarez's prior conviction in 1993 for contributing to the delinquency of a minor should be included as part of his criminal

---

[5]During the sentencing hearing, both the court and the parties referred to the 2006 version of the Sentencing Guidelines as evidenced by their reference to various page numbers that correspond to that version. For my purposes, this mistake is inconsequential because the Sentencing Commission did not modify the relevant Guidelines' provision (U.S.S.G. § 4A1.2) between 2005 and 2006.

history calculation. See Slip Op. at 3 & n.3. If this prior offense is not counted, Leon-Alvarez's criminal history would be in category I, making him eligible for safety valve relief.

On remand, the district court's calculation of Leon-Alvarez's criminal history will turn on it properly applying § 4A1.2(c). Leon-Alvarez's 1993 conviction will not count toward his criminal history if it is "similar to" one of the fifteen offenses listed in § 4A1.2(c)(1).[6]

At the time of Leon-Alvarez's original sentencing, the rule in this Circuit for determining whether a prior offense is "similar to" an offense listed in § 4A1.2(c)(1) had been re-stated in United States v. Borer, 412 F.3d 987 (8th Cir. 2005). In Borer, we reiterated: "To determine whether two crimes are similar for purposes of § 4A1.2(c), [district courts must] compare the resemblance and character of the offenses." Id. at 992 (internal quotations and citation omitted). We recognized, however, that our "elements" or "essential characteristics" approach conflicted with the "multi-factor" approach employed by other circuits to determine whether a prior offense has the requisite similarity to an offense listed in § 4A1.2(c).

> We thus decline Borer's suggestion that we adopt a multi-factor approach championed by the Fifth Circuit and others, which also considers the underlying facts of the defendant's offense, as well as such matters as a "comparison of punishments imposed for the listed and

_____

[6]In order for a prior offense not to count under § 4A1.2(c)(1), a defendant must also show that his prior offense did not result in a term of probation of more than one year or a term of imprisonment of at least thirty days. The Government does not dispute that Leon-Alvarez meets this condition. Section 4A1.2(c)(2) enumerates six types of prior offenses (and those "similar to" them) that are never included as part of a defendant's criminal history calculation. Leon-Alvarez did not argue, however, that his prior offense of contributing to the delinquency of a minor is "similar to" any of these (c)(2) offenses.

unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, . . . the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991); see also United States v. Martinez-Santos, 184 F.3d 196, 205-06 (2d Cir. 1999); United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995). We share the concern of the Fourth Circuit that some of the factors used in these multi-factor tests are vague, subjective, or lacking in unifying principle, such that they "leave the law indeterminate." See Harris, 128 F.3d at 854-55.

Id. at 992.

Recently, however, the United States Sentencing Commission ("Commission") adopted Amendment 709. In that Amendment, the Commission expressly rejected our "elements" approach in favor of the "multi-factor" approach for determining whether a prior offense is "similar to" one of the enumerated offenses in § 4A1.2(c). In effect, Amendment 709 clarified the approach courts should use in determining the "similarity" of offenses for the purposes of § 4A1.2(c) thus trumping our decision in Borer. Specifically, the Commission amended the application notes to § 4A1.2(c) as follows:

> (A)   In General.–In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2, comment. (n.12(A)) (2007) (adopted by Amendment 709, effective November 1, 2007).

The Commission explained the reasons for the Amendment as follows:

> The amendment resolves a circuit conflict over the manner in which a court should determine whether a non-listed offense is "similar to" an offense listed as §4A1.2(c)(1) or (2). Some courts have adopted a "common sense approach," first articulated by the Fifth Circuit in United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991). This common sense approach includes consideration of all relevant factors of similarity such as "punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offenses as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." Id. See also United States v. Martinez-Santos, 184 F.3d 196, 205-06 (2d Cir. 1999) (adopting Hardeman approach); United States v. Booker, 71 F.3d 685, 689 (7th Cir. 1995) (same). Other courts have adopted a strict "elements" test, which involves solely a comparison between the elements of the two offenses to determine whether or not the offenses are similar. See United States v. Elmore, 108 F.3d 23, 27 (3d Cir. 1997); United States v. Tigney, 367 F.3d 200, 201-02 (4th Cir. 2004); United States v. Borer, 412 F.3d 987, 992 (8th Cir. 2005). This amendment, at Application Note 12(A), adopts the Hardeman "common sense approach" as a means of ensuring that courts are guided by a number of relevant factors that may help them determine whether a non-listed offense is similar to a listed one.

Supplement to App. C, Amendment 709.

Amendment 709 appears to be a clarifying amendment with respect to § 4A1.2(c). Cf. United States v. Larson, 110 F.3d 620, 627-28 n.8 (8th Cir. 1997) ("Because amendment 345 only clarifies the *interpretation of* § 3B1.1, it is not a substantive change in the guideline.") (emphasis added, citations omitted).[7] And as

_____

[7] Amendment 709 also modified the operative text of § 4A1.2(a)(2) with respect to determining whether multiple prior sentences are counted separately or as a single

such, Amendment 709 may be given retroactive effect at sentencing and override contrary circuit precedent.  See United States v. Douglas, 64 F.3d 450, 453 (8th Cir. 1995) (indicating that clarifying changes or amendments to the Guidelines operate retroactively, even if not designated as such by the Commission in § 1B1.10(c)); see also United States v. Renfrew, 957 F.2d 525, 527 (8th Cir. 1992) ("We may rely on a post-sentence clarifying amendment in interpreting [an] unamended Guideline.").

On remand, the district court will determine whether Leon-Alvarez's prior conviction is similar to an offense listed in § 4A1.2(c)(1).  In doing so, the district court should consider whether Amendment 709 operates retroactively in this case.

_____

sentence.  The Third and Ninth Circuits have concluded that this aspect of Amendment 709 effected a substantive change to § 4A1.2(a)(2).  See United States v. Wood, 526 F.3d 82, 87-88 (3d Cir. 2008); United States v. Marler, -- F.3d --, 2008 U.S. App. LEXIS 11402, *6 n.1 (9th Cir. May 29, 2008).  These cases have no bearing on the effect of Amendment 709 as making a clarifying change with respect to *§ 4A1.2(c)*, which can be applied retroactively.