# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2066

_____

United States of America,      *
                             *

         Appellee,      *

                             *     Appeal from the United States

     v.                        *     District Court for the

                             *     District of Minnesota.

Martin Sanchez Barrera, aka      *
Juan Nunez Gutierrez,      *

                             *

         Appellant.      *

_____

Submitted: November 10, 2008
Filed: April 10, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Martin Sanchez Barrera pleaded guilty to one count of possession with intent to distribute approximately 91 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The district court[1] sentenced Barrera to 120 months' imprisonment followed by a five-year term of supervised release. On appeal, Barrera argues that the district court erred (1) in finding that he was on probation at the time of the offense and assessing him two criminal history points under U.S.S.G.

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

§ 4A1.1(d) for committing the instant offense while on probation and (2) in failing to use its *Booker* discretion to apply 18 U.S.C. § 3553(f)'s safety valve. We affirm.

## I. *Background*

In 2003, Barrera pleaded guilty to misdemeanor assault in Oregon state court. The court sentenced him to 30 days in jail and five years' probation. Barrera's probation was scheduled to expire on November 21, 2008, but he was deported before expiration of his probation. Barrera returned to the United States in 2005 and sometime afterward began selling methamphetamine.

In September 2007, authorities arrested Barrera after he delivered 240 grams of methamphetamine to a confidential informant. Barrera pleaded guilty to possession with intent to distribute approximately 91 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The presentence investigation report (PSR) assessed Barrera two criminal history points pursuant to § 4A1.1(d) because he was on probation at the time the instant offense was committed. At sentencing, the district court followed the PSR recommendation and increased Barrera's criminal history score by two points. Further, the district court refused to apply the safety valve, which would have made Barrera eligible for a sentence below the mandatory minimum sentence pursuant to § 3553(f). Barrera was sentenced to 120 months' imprisonment and five years of supervised release.

## II. *Discussion*

First, Barrera argues that the district court erred in determining that he was on probation at the time of the offense and assessing him two criminal history points under § 4A1.1(d) for committing the instant offense while on probation. Second, he argues that the district court erred in refusing to apply the safety valve under § 3553(f).

A. *Criminal History Calculation*

Barrera asserts that the district court erroneously added two points to his criminal history score because he committed the instant offense while on probation for his Oregon misdemeanor assault offense. *See* U.S.S.G. § 4A1.1(d). But Barrera failed to object below to the factual findings of the PSR. Without objection, the district court accepted the PSR's recommendation and added two points to Barrera's criminal history score. Accordingly, Barrera "has waived this issue and may not raise it before this court unless he can demonstrate plain error resulting in a miscarriage of justice." *United States v. Flores*, 959 F.2d 83, 88 (8th Cir. 1992) (internal quotations and citations omitted).

The Guidelines allow a district court to award two additional criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation." U.S.S.G. § 4A1.1(d). Barrera argues that once he was deported to Mexico, he was no longer on probation for purposes of § 4A1.1(d). Specifically, Barrera asserts that because Oregon no longer exercised authority over him, his deportation terminated his probation. This argument is without merit. Although this is an issue of first impression in our circuit, other circuits have expressly held that deportation does not automatically extinguish penal supervision such as parole and supervised release. *See, e.g., United States v. Carrasco-Mateo*, 389 F.3d 239, 247 (1st Cir. 2004). We believe the same principle applies to probation and hold that Barrera committed the instant offense while under a criminal justice sentence despite his intervening deportation.

Federal law, not state law, governs whether a defendant is under "any criminal justice sentence." *See Carasco-Mateo*, 389 F.3d at 247. In *Carrasco-Mateo*, the appellant argued that because he was deported, he was no longer under New York parole. *Id*. at 246. The First Circuit concluded that whether a defendant is on parole is a question of federal law. *Id*. at 246–47. The appellant asserted that because New York no longer exercised custodial or supervisory authority over him, his term of

parole had ended. *Id*. at 247. The court relied on immigration law in rejecting this argument, stating that "Congress directed the Attorney General that a deportation action should proceed apace notwithstanding an alien's parole status 'or possibility of arrest or further imprisonment.'" *Id*. (quoting 8 U.S.C. § 1231(a)(4)(A)). The court determined that § 1231(a)(4)(A) implicitly endorsed the proposition that "deportation leaves an existing term of parole intact" because "an alien may be deported and later face incarceration for violating his parole." *Id*. Therefore, the court held "that, under federal law, deportation does not automatically extinguish an existing term of parole." *Id*.

Just as in *Carrasco-Mateo*, the Oregon court in the instant case did not lose authority over Barrera merely because he was deported. *Id*. This decision is in accord with other circuit courts that have addressed similar issues. *See United States v. Phillips*, 413 F.3d 1288, 1292 (11th Cir. 2005) (holding that deportation did not cut short appellant's parole term regardless of appellant's subjective beliefs); *United States v. Williams*, 369 F.3d 250, 252–53 (3d Cir. 2004) (holding that term of supervised release was not automatically terminated when defendant was deported from United States, and thus defendant's subsequent commission of another offense, illegal re-entry after deportation, prior to expiration of term of supervised release, violated condition of supervised release that defendant commit no new offenses); *United States v. Cuero-Flores*, 276 F.3d 113, 118 (2d Cir. 2002) (holding that parole survives deportation); *United States v. Akinyemi*, 108 F.3d 777, 779 (7th Cir. 1997) (stating that Congress did not intend for deportation to extinguish supervised release); *United States v. Brown*, 54 F.3d 234, 238 (5th Cir. 1995) (holding that because Congress did not specifically state that deportation terminates supervised release, it remains intact even after an alien's deportation). We find these authorities persuasive. Accordingly, we hold that the district court committed no error, plain or otherwise, in finding that Barrera was on probation and assessing two criminal history points under § 4A1.1(d).

B. *Safety-Valve Relief*

Barrera also argues that the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), granted district courts the discretion to treat the safety-valve provision of 18 U.S.C. § 3553(f) as advisory. Barrera contends that the district court erroneously assessed three criminal history points under the Guidelines based on his overstated criminal history, thus making him ineligible for the safety valve. Barrera asserts that the district court could have considered its assessment of criminal history points as advisory and used its discretion to reduce his criminal history score to meet the requirements of the safety valve, and set his sentence below the mandatory minimum 120 months. We disagree and affirm.

Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met. 18 U.S.C. § 3553(f). At issue here is the requirement that the defendant not have more than "1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). Barrera essentially argues that *Booker* and its progeny made this provision of the Guidelines merely advisory because criminal history is *determined under the Guidelines*.

In *Booker*, the Supreme Court held that the Guidelines violated the Sixth Amendment and rendered them "effectively advisory." 543 U.S. at 244, 245. Since *Booker*, the Supreme Court has made it clear that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). After a correct calculation of the Guidelines, the district court should then decide whether to impose a sentence outside the suggested range. *Id.* at 596–97. The district court here followed *Booker* and correctly calculated Barrera's Guidelines range.

We have already addressed and rejected the notion that a criminal history point calculation is advisory post-*Booker*. In *United States v. Leon-Alvarez*, 532 F.3d 815, 815 (8th Cir. 2008), the appellant pleaded guilty to conspiracy to distribute 50 grams

or more of methamphetamine mixture. During sentencing, the district court assessed the appellant only one criminal history point despite his two prior convictions. *Id.* at 816. The district court reasoned that, after *Booker*, calculation of criminal history points was advisory. *Id.* at 818. On appeal, we reversed the district court, holding that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* We also noted that, according to "several of our sister circuits," the calculation of the criminal history points is not advisory. *Id.* (citing *United States v. Hernandez-Castro*, 473 F.3d 1004 (9th Cir. 2007); *United States v. Barrero*, 425 F.3d 154 (2d Cir. 2005)).

The district court properly considered Barrera's prior conviction and his probationary status at the time of the instant offense in calculating his criminal history score. *See supra* Part II.A. This calculation must precede any departures that may be granted under U.S.S.G. § 4A1.3(b)(3)(B) based on overstated criminal history. *See* U.S.S.G. § 5C1.2(a)(1). Barrera has more than two criminal history points; thus, he is ineligible for safety-valve relief. The district court could not have reduced Barrera's criminal history score simply to make him eligible for safety-valve relief. Other circuits have reached the same conclusion. *See United States v. Hunt*, 503 F.3d 34, 37 (1st Cir. 2007) (holding that the plain language of the Guidelines precludes appellant from receiving the benefit of the safety valve regardless of whether the district court wanted to grant a downward departure because appellant had *two* criminal history points); *see also Barrero*, 425 F.3d at 157 (holding that the "district court was plainly correct when it decided that it did not have the discretion to award [appellant] only one point under the Guidelines once it had determined, by the process provided by the Guidelines, that [appellant] had two such points").

### III. *Conclusion*

Barrera was properly assessed three criminal history points, making him ineligible for safety-valve relief. Barrera has not otherwise challenged the reasonableness of his sentence. Therefore, the district court's sentence is affirmed.

_____