# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2408

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Humberto Flores

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2013
Filed: April 23, 2013
[Unpublished]

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Jose Flores appeals from his sentence after the district court[1] found him ineligible for a "safety-valve" sentence under 18 U.S.C. § 3553(f). We affirm.

_____

[1]The Honorable D. Price Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

Flores, an over-the-road truck driver, shared a table at a restaurant in Arizona with another truck driver in 2008. After talking for nearly an hour, Flores and this individual exchanged telephone numbers. This encounter led to Flores forming a friendship with the other truck driver.[2] The two kept in contact with one another over the next two years, sometimes by crossing paths, but usually by calling one another four or five times each year. During a January 2010 conversation, Flores told the friend that he was worried because his truck needed certain repairs that he did not have the money to pay for. The friend agreed to help Flores and extended him a $4,000 loan to repair his truck. In May 2010, the friend called Flores and told him that he had to pay the loan back immediately. Flores was unable to pay the loan back and requested more time to gather the necessary funds. The friend refused Flores's request and asked Flores to meet him in California to discuss repaying the loan.

When Flores arrived in California, the friend told him that he could either pay the $4,000 immediately or he could deliver five kilograms of cocaine to North Carolina as repayment for the debt. Flores said he was not comfortable delivering the cocaine and that he did not want to do it. He again asked for more time to pay back the loan. The friend told Flores not to worry because he would pack the cocaine in the truck and would send along an associate to claim ownership of the cocaine if the truck was intercepted by police. When Flores again expressed reservations, the friend became agitated and made it clear that unless Flores had the money to repay the loan, he was going to repay the loan by driving the cocaine to North Carolina. After this continued pressure, Flores finally accepted the friend's request to drive the cocaine to North Carolina.

Flores gave the keys to his truck to his friend, who took the truck to an unknown location, where it was loaded with cocaine. When the friend returned to the

---

[2]The name of the individual that Flores met and befriended was withheld for security reasons and he will thus hereinafter be referred to as "the friend."

restaurant where Flores was waiting, he told Flores that there had been a change of plans. The individual who was supposed to ride with Flores had been involved in a car accident and could not go on the trip. Moreover, the friend revealed that instead of five kilograms of cocaine, he had placed thirty-one kilograms of cocaine in the truck.[3] The friend told Flores that because of the change of plans, not only would this trip satisfy the $4,000 debt, but the friend would also pay Flores an additional $5,000 after the trip was completed.

Flores claims he was given a phone and told to begin driving toward North Carolina and that he would receive instructions regarding the drop off location when he got closer to North Carolina. On May 28, 2010, Flores was driving through Arkansas when an Arkansas State Police trooper observed Flores's truck swerving and initiated a stop. Flores granted the trooper's request for consent to search Flores's truck. During the search, the trooper discovered the cocaine hidden in a space behind the truck's speakers. Flores was arrested and indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Eventually, Flores pleaded guilty. In anticipation of seeking relief under the "safety-valve" provision of 18 U.S.C. § 3553(f), Flores gave a proffer interview with the government. During this first interview, he discussed his actions related to the cocaine but refused to give information about anyone else involved with the incident, stating that he believed them to be very dangerous.

Later, Flores gave a second proffer interview, during which he disclosed the relationship with the friend and how he came into possession of the thirty-one kilograms of cocaine. Flores gave the government the friend's first name but was unable to provide a last name, phone number, or any other characteristics or

---

[3]The DEA task force case agent testified that this amount of cocaine had an approximate wholesale value of $900,000 and an approximate street value of $3.1 million.

identifiers. Moreover, he was unable to remember the name of the street or any particular details regarding the location of the meeting in California, other than the two cities in between which it took place. Flores initially claimed to have no knowledge regarding the potential recipients of the cocaine in North Carolina, but at the very end of the second proffer interview admitted that he knew their nicknames and confirmed that a phone number found in the truck belonged to them. He claimed that he knew nothing else regarding who they were or where they were located.

The only phone discovered during the search of Flores's truck was Flores's personal phone; the phone allegedly given to him by the friend was never found. Law enforcement officers also discovered a GPS device attached to Flores's windshield. The current destination entered on the GPS was an address in North Carolina. That same address was listed also as a previous destination.

At sentencing, Flores argued that he was entitled to a "safety-valve" sentence under § 3553(f). "Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met." United States v. Scott, 662 F.3d 492, 494 (8th Cir. 2011) (quoting United States v. Barrera, 562 F.3d 899, 902 (8th Cir. 2009)). One such requirement is that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" 18 U.S.C. § 3553(f)(5). The district court concluded that Flores was not eligible for safety-valve relief, finding that he had not given a complete and truthful proffer. It then sentenced Flores to the statutory mandatory-minimum term of 120 months' imprisonment. Flores contends that the district court's "safety-valve" determination was erroneous.

The district court's determination that Flores had failed to give a complete and truthful proffer was based on two aspects of Flores's proffer interview: (1) that Flores

probably knew more information about the friend than just his first name, especially in light of the relationship that the two truck drivers maintained in the two years prior to the drug trafficking; and (2) that Flores probably knew more than he revealed about where he was going in North Carolina. "We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer." United States v. Soto, 448 F.3d 993, 995 (8th Cir. 2006) (quoting United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005)). "In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence." United States v. Alvarado-Rivera, 412 F.3d 942, 948 (8th Cir. 2005) (en banc). "Affirmance is required if the record supports the court's findings[.]" Id. at 947.

The district court did not clearly err in determining that Flores likely possessed more information than he provided to the government regarding the friend and the location of the drop off in North Carolina. The evidence demonstrated that Flores maintained a relationship with the friend for two years, including occasionally crossing paths on the road and speaking on the phone four or five times each year; that the friend trusted Flores enough to lend him $4,000 to help him repair his truck and Flores trusted him enough to accept the loan; and that the friend trusted Flores enough to place nearly $1 million of cocaine in his possession to drive across the country without any means of surveillance. In the face of this evidence, Flores was able to provide the government only the first name of the friend. No other characteristics or identifiers were provided, nor did Flores provide the government with the friend's phone number during either proffer interview. These facts support the district court's inference that Flores likely knew more about the friend than he revealed.

Similarly, the district court's finding that Flores likely knew more about his eventual destination in North Carolina is supported by the record. The evidence demonstrated that although North Carolina is a large state, Flores claimed to have

received no instructions on where to enter the state or where to drop off the cocaine, but was instead awaiting a call on a phone that was never discovered; that a GPS device found attached to the windshield of Flores's truck was programmed to a North Carolina address, about which Flores denied having any knowledge; that this address was listed in the GPS not only as the current destination, but also as a previous destination; and that this address was located in a rural residential area of North Carolina, which contradicted Flores's counsel's suggestion that it could have been the address of an establishment selling tractor trailers. Again, taken together, these facts support the district court's inference that Flores knew more about his eventual destination than he told the government.

The sentence is affirmed.

_____