# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1713

_____

United States of America

*Plaintiff - Appellee*

v.

Alfonso Vega Diaz

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 16, 2014
Filed: March 25, 2014
[Unpublished]

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Alfonso Vega Diaz pleaded guilty to one count of conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and was sentenced to 120 months' imprisonment, the statutory mandatory minimum sentence. Vega Diaz appeals from

his sentence, arguing that the district court[1] clearly erred in denying him relief under the safety-valve provision of 18 U.S.C. § 3553(f). We affirm.

A confidential informant purchased methamphetamine from Vega Diaz and his brother-in-law, Sergio Juarez Mata, during three controlled buys. On July 18, 2012, Vega Diaz, Juarez Mata, and the confidential informant met at a motel and then went together by vehicle to a different location. When they arrived, Vega Diaz and the confidential informant waited in the vehicle while Juarez Mata exited and obtained methamphetamine from Adan Garcia Mendoza. Upon Juarez Mata's return, the confidential informant purchased one ounce of methamphetamine, and Vega Diaz counted the buy money. On July 23, 2012, the confidential informant purchased one ounce of methamphetamine directly from Vega Diaz. On August 8, 2012, the confidential informant again tried to purchase one ounce of methamphetamine from Vega Diaz, but he was unable to do so because Vega Diaz could not procure the drugs. The confidential informant overheard a phone call between Vega Diaz and Garcia Mendoza, during which they discussed a shipment of methamphetamine. The next day, the confidential informant purchased one ounce of methamphetamine from Vega Diaz. Law enforcement officials then instructed the confidential informant to order three additional ounces of methamphetamine, which he did. Garcia Mendoza delivered three ounces to Vega Diaz, who was in possession of the methamphetamine when he was arrested. A search of Garcia Mendoza's stash house revealed four-and-a-half pounds of methamphetamine.

Following Vega Diaz's guilty plea, he requested a proffer interview so that he could seek relief from the statutory mandatory minimum sentence under the safety-valve provision of 18 U.S.C. § 3553(f). Lonnie Namanny, a special agent with the Drug Enforcement Administration, conducted the interview. Vega Diaz told

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

Namanny that Juarez Mata had introduced him to Garcia Mendoza, whom he did not know well. Vega Diaz said that he had sold methamphetamine only to the confidential informant and only on the dates of the controlled buys. According to Namanny, Vega Diaz later admitted that he also had sold methamphetamine to an unknown person at a bar. Vega Diaz claimed that he did not know how much the confidential informant paid for the methamphetamine, but later said that he had charged $1500 for one ounce. Namanny did not believe that Vega Diaz was being truthful and thought that he was minimizing his role in the conspiracy. Namanny terminated the interview after thirty minutes.

Namanny and Vega Diaz testified at the sentencing hearing. Namanny testified that the quantities of methamphetamine that Vega Diaz sold were consistent with quantities sold by a drug dealer, not by an addict who was selling to obtain drugs for personal use. Vega Diaz testified that he had sold methamphetamine on three occasions to the confidential informant, but he denied having sold methamphetamine to an individual in a bar or having admitted to Namanny that he had done so. Vega Diaz also testified that he did not know how much the confidential informant paid for the drugs. The district court denied safety-valve relief, finding that Vega Diaz had failed to truthfully provide to the government all information he had concerning the conspiracy:

> [A]fter carefully considering the evidence, I think that during the interview [Vega Diaz] gave inconsistent statements to the agent, and in doing that severely damaged his credibility, and by testifying today, I don't see where he added anything that would allow me to find at this time that he is carrying his burden of providing truthful information.

Vega Diaz contends that he was entitled to a safety-valve sentence reduction under 18 U.S.C. § 3553(f). "Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met." United States v. Barrera, 562 F.3d 899, 902 (8th Cir. 2009). There are five statutory requirements for

safety-valve eligibility, and it is undisputed that Vega Diaz met the first four. See 18 U.S.C. § 3553(f)(1)-(4). At issue is whether he met the fifth requirement, which provides that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." Id. § 3553(f)(5). "We review for clear error a district court's findings as to the completeness and truthfulness of a defendant's safety-valve proffer." United States v. Soto, 448 F.3d 993, 995 (8th Cir. 2006) (quoting United States v. Bolanos, 409 F.3d 1045, 1047 (8th Cir. 2005)).

The district court did not clearly err in finding that Vega Diaz was not credible and had not truthfully provided all information he had regarding the conspiracy. As set forth above, Vega Diaz gave inconsistent statements regarding whether he had sold methamphetamine to anyone other than the confidential informant and whether he knew the price that the confidential informant had paid for one ounce of methamphetamine. Moreover, although Vega Diaz testified that he did not know Garcia Mendoza well, he repeatedly had been able to procure methamphetamine from Garcia Mendoza during a multi-week time span. In light of the quantities of methamphetamine Vega Diaz had sold to the confidential informant and Vega Diaz's admission to Namanny that he had distributed to an unknown person at a bar, the district court could also reasonably infer that Vega Diaz had a larger role in the conspiracy than merely selling methamphetamine to the confidential informant on three occasions. See United States v. Alvarado-Rivera, 412 F.3d 942, 948 (8th Cir. 2005) (en banc) ("In making its assessment of the truthfulness of a safety valve proffer, the district court is entitled to draw reasonable inferences from the evidence."). The district court thus did not err in denying Vega Diaz safety-valve relief from the statutory mandatory minimum sentence.

The sentence is affirmed.

_____